[Civ. No. 21935. Third Dist. June 25, 1985.]

RALPH H. NICHOLS et al., Plaintiffs and Appellants, v.
GREAT AMERICAN INSURANCE COMPANIES et al.,
Defendants and Appellants.

UNITED PACIFIC INSURANCE COMPANY, Plaintiff and Appellant, v.
RALPH H. NICHOLS et al., Defendants and Appellants;
ADOLPH B. GOWER, JR., Defendant, Cross-complainant and Appellant;
AID INSURANCE SERVICES, INC., Cross-defendant and Respondent.

**COUNSEL**

Douglas H. Drake for Plaintiffs and Appellants, Defendants and Appellants and for Defendant, Cross-complainant and Appellant.

Greve, Clifford, Diepenbrock & Paras and Lawrence A. Wengel for Plaintiff and Appellant.

Bolling, Walter & Gawthrop, George E. Murphy and Craig E. Farmer for Defendants and Appellants.

Cris C. Vaughan and Gary L. Hall for Cross-defendant and Respondent.

## Opinion

**CARR, J.**—This appeal presents questions of the scope of coverage of business and personal liability insurance policies for conduct of the insured parties who are alleged to have sold devices designed to intercept pay television signals, or as more commonly designated, airwave piracy. The trial court found the insurance companies were not obligated to defend or indemnify the underlying lawsuit. We conclude this finding was correct and shall affirm.

## Facts

The instant litigation commenced with the filing of a complaint by California Satellite Systems (Calsat). Named as defendants, among others, were Ralph Nichols (doing business as Phil's Antenna), Nichols' employee Stan Darrow, and Adolph Gower (doing business as Cordova TV) (hereafter referred to collectively as appellants). Calsat alleged the following: It holds the exclusive license for distribution of the signal of "Home Box Office" (HBO) in the Sacramento area; HBO is a video home entertainment service, which is transmitted by microwave signals. Calsat supplies paid subscribers with an antenna and electronic downconverter to permit reception of the HBO signal on the subscriber's television set; appellants are engaged in selling and distributing devices intended solely for the purpose of illegally intercepting the HBO signal. Calsat sought injunctive relief to prohibit the further sale of these devices by appellants as it was suffering irreparable injury consisting of "loss of value of business opportunities in the Sacramento marketing area, reputation and good will [and] of its exclusive license to market and deliver HBO programming . . . ." Compensatory damages were sought as well as punitive damages for alleged wilful and malicious conduct by appellants.

Nichols and Gower tendered the defense of this complaint to their respective insurance companies. The insurers refused to provide either a defense or indemnification. Nichols then sought declaratory relief against his business liability insurer, Great American Insurance.[1] Nichols had also unsuccessfully tendered the defense to his homeowner's carrier, United Pacific Insurance. Shortly after Nichols sued Great American, United Pacific filed a complaint for declaratory relief naming Nichols, Great American and Gower, inter alia, as defendants. The United Pacific action prompted Gower to file a cross-complaint against his business liability insurer, AID Insurance

---

[1] The record shows the policy was actually issued by the American National Fire Insurance Company, which is a subsidiary of Great American Insurance Companies. For convenience, this insurer will hereafter be referred to collectively as "Great American."

Services (AID). Upon motion by appellants, the trial court consolidated the actions.

Great American demurred to Nichols' complaint for declaratory relief. AID also demurred to Gower's cross-complaint. The insurers contended they had no duty to defend or indemnify appellants as the conduct alleged by Calsat was neither a risk covered by the policies, nor an "occurrence" within the meaning of the policies. The trial court agreed and sustained both demurrers without leave to amend.

United Pacific moved for summary judgment on the grounds that only Nichols was an "insured" under its policy, there was no duty to defend or indemnify Nichols under the policy, and assuming a duty to defend, that duty was excess over the coverage provided by Great American. United Pacific's motion was granted.

## CONTENTIONS

Nichols, Darrow and Gower appeal from the ensuing judgment and orders of dismissal, contending: (1) the damages allegedly suffered by Calsat are within the indemnity and defense coverage of the Great American and AID policies; (2) United Pacific owes a separate duty to defend Nichols; and (3) the conduct alleged in the Calsat complaint constitutes an "occurrence" within the meaning of all the policies. Both Great American and United Pacific have filed protective cross-appeals on the issue of contribution in the event a duty to defend Nichols is found under both policies.

We conclude the Calsat complaint does not allege damages of the type covered by any of the policies. Accordingly, the trial court correctly exonerated the insurers from any duty to indemnify or defend appellants in the pending Calsat action. Our conclusion renders the insurers' protective cross-appeals moot.

## DISCUSSION

### I

The crux of this appeal is appellants' contention that the kind of injuries alleged by Calsat are within the risks covered by the indemnity and defense provisions of the various insurance policies. Three basic principles have been judicially developed for determining the obligation of a liability insurer to its insured. First, any doubts as to the meaning of the policy, including the extent or fact of coverage, the peril insured against, the amount of liability, and the persons protected, must be resolved against

the insurer. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269, fn. 3 [54 Cal.Rptr. 104, 419 P.2d 168].) ■ Second, because of the difficulty of determining whether the third party suit falls within the policy coverage, the duty to defend is broader than the duty to indemnify. Although the duty to defend is not unlimited, it arises whenever the insurer ascertains facts which give rise to the possibility or potential of liability to indemnify. (*Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 278 [142 Cal.Rptr. 681].) ■ Finally, courts. must ascertain that meaning of the contract which the insured would reasonably expect. (*Id.*, at p. 279, citing *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 269-270.) Applying these principles we examine the language of the two business liability policies and the homeowner's policy.

■ The Great American policy insured against bodily injury and property damage caused by an "occurrence."[2] "Bodily injury" was defined to include "personal injury committed in the conduct of the named insured's business." The AID policy insured against "damages because of bodily injury, property damage or personal injury caused by an occurrence . . . ." Since both policies limited the definition of "property damage" to *tangible* property, it is apparent the kind of economic losses alleged by Calsat are neither physical bodily injury nor property damage within the meaning of the policies. (See *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219 [169 Cal.Rptr. 278].) Appellants contend, however, that Calsat has alleged a form of disparagement or defamation which falls within the definition of "personal injury." We disagree.

Both policies include within the definition of "personal injury": "the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured." Appellants contend the allegations of the Calsat complaint set forth a cause of action for trade libel or disparagement within the above definition of "personal injury" and urge the thrust of Calsat's complaint is that by advertising and selling devices intended to intercept the HBO signal, appellants have disparaged Calsat's exclusive license to distribute that signal. To determine if Calsat has asserted trade libel

---

[2]Both the Great American policy and the AID policy define "occurrence" in relevant part as "an accident, including continuous or repeated exposure to conditions, which results during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured. . . ."

The United Pacific policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

against the appellants we must first examine the elements of the tort and compare them with the allegations of Calsat's complaint.

"Trade libel is defined as an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff. . . . 'Injurious falsehood, or disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, . . . [T]he plaintiff must prove in all cases that the publication has played a material and substantial part inducing others not to deal with him, and that as a result he has suffered special damages. . . . Usually, . . . the damages claimed have consisted of loss of prospective contracts with the plaintiff's customers.' " (*Erlich* v. *Etner* (1964) 224 Cal.App.2d 69, 73 [36 Cal.Rptr. 256].) ■ *Erlich* notwithstanding, it is not absolutely necessary that the disparaging publication be intentionally designed to injure. If the statement was understood in its disparaging sense and if the understanding is a reasonable construction of the language used or the acts done by the publisher, it is not material that the publisher did not intend the disparaging statement to be so understood. (Rest.2d Torts, § 629, com. f, p. 350.)[3] The possibility of liability for negligent disparagement is crucial in the instant case, because if defendant's conduct was intentional, as Calsat alleges, there was no "occurrence" as defined by the policies. (See fn. 2.)

■ A cause of action for trade libel thus requires (at a minimum): (1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages. ■ Turning to Calsat's complaint, the insurers contend the complaint fails to allege any publication or utterance of any disparaging material. The insurers are correct as to the face of the complaint. The relevant allegation states: "Plaintiff also has suffered and continues to suffer irreparable injury to its business for which it cannot be adequate[ly] compensated in damages: said damage is continuing and threatens to continue unless defendants are enjoined and restrained by this Court from the possession, use, sale, manufacture, distribution, advertising of said devices for the interception of HBO programming. The plaintiffs' remedy of law is inadequate and consists of the loss of value of business opportunities in the Sacramento marketing area, reputation and good will, of its exclusive license to market and deliver HBO programming by microwave transmissions

---

[3]An example of such a negligent defamation is found in *Hellar* v. *Bianco* (1952) 111 Cal.App.2d 424 [244 P.2d 757, 28 A.L.R.2d 1451]. There, the plaintiff's name and telephone number appeared on the wall of the restroom in defendant's tavern with the inscription that plaintiff "was an unchaste woman who indulged in illicit amatory ventures." (*Id.*, at p. 425.) After being informed of this libelous writing, defendant failed to remove it. This court found whether defendant was guilty of a negligent republication of the libel was a question for the jury and reversed a judgment of nonsuit. (*Id.*, at pp. 426-427.)

in the Sacramento market." Calsat did not allege any statement or conduct by appellants which directly cast aspersions on either Calsat's equipment or license. In fact, the only allegation contemplating any type of publication whatsoever is that appellants engaged in "advertising" these devices. But the definitions of "personal injury" in both policies *excepts* "publications or utterances in the course of or related to *advertising* . . . on behalf of the named insured." (Italics added.) Even construing Calsat's complaint as broadly as possible, the only allegation of a publication is one which is excepted from coverage if defamatory.

Appellants respond that the disparaging statements are found not on the face of the complaint, but rather in the reports of a Calsat investigator, which were incorporated into the complaint by reference. These reports detailed incidents in which Nichols, one of Nichols' employees, and Gower offered to sell the investigator devices capable of intercepting HBO. Nichols indicated there was "nothing wrong" with having such equipment as long as the programs were not resold. Appellants urge the implication in all these offers is that it is permissible to intercept the HBO signal without paying for the service and these statements were made for the purpose of inducing potential Calsat customers to purchase appellants' equipment, with the result that illegal interception of the HBO signal would occur. Thus, appellants argue, Calsat pleaded all the elements of a cause of action for trade libel against appellants.

Initially, we have difficulty with the concept of incorporation by reference into Calsat's complaint an essential element of disparagement (a publication) from statements in attached reports which are only inferentially defamatory in character. ▆ Such a procedure is contrary to the general proposition that " 'an essential element to a cause of action must be presented by a distinct averment, and cannot be left to an inference to be drawn from the construction of a document attached to the complaint.' " (*California Trust Co.* v. *Gustason* (1940) 15 Cal.2d 268, 273 [101 P.2d 74].) ▆ The precise statements contained in the reports are either ambiguous or susceptible of an innocent meaning, (i.e., there is "nothing wrong" with having the antenna device if it is not used for intercepting HBO). In such circumstances, it is incumbent upon the plaintiff to plead by innuendo the facts showing the defamatory meaning of the statements. (*Bates* v. *Campbell* (1931) 213 Cal. 438, 442 [2 P.2d 383]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 602, p. 2240.) ▆ The Calsat complaint contains no suggestion of the defamatory meaning that appellants seek to infer. As appellants have no power to amend Calsat's complaint, they cannot insert an essential allegation where none appears. The failure of Calsat to distinctly aver a disparaging publication in its complaint precludes any recovery on a defamation theory.

Assuming arguendo appellants correctly characterize the complaint as containing allegations of statements by appellants that insinuate Calsat has no exclusive right to distribute these devices, the comments were concededly made in the context of attempting to induce people to buy appellants' products. Since the statements fall within the realm of *advertising*[4] and of defamatory statements made in the course of, or related to, advertising on behalf of the named insured (appellants) they are excluded from coverage under the "personal injury" definition in the policies.

We conclude the Calsat complaint cannot be tortured to state a cause of action for trade libel. The necessary element of a defamatory publication or utterance is missing from the complaint and cannot be supplied by reference to reports in which the defamatory innuendo appears only inferentially. Moreover, the only conceivable statements to which appellants can point were all made in the course of advertising and are therefore excluded from coverage under the policies. Calsat was seeking an injunction and damages for a wrongful interference by appellants in Calsat's microwave transmission business. This was not the type of injury appellants could reasonably expect their business liability policies to cover. The trial court correctly rejected appellants' claim of coverage on this theory.

Independent of their trade libel theory, appellants note the business liability policies include within the definition of "personal injury" a "wrongful entry or eviction, or other invasion of the right of private occupancy." They contend the Calsat complaint sets forth such an invasion of the right of private occupancy in that Calsat alleges appellants have invaded Calsat's exclusive right to "occupy" a certain microwave channel or frequency. This contention is more tenuous than appellants' trade libel theory.

Absent a clear indication to the contrary, words in an insurance policy are to be read in their plain and ordinary sense. (*Highlands Ins. Co. v. Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 174-175 [154 Cal.Rptr. 683].) "Occupancy" ordinarily refers to "the taking and holding possession of real property under a lease or tenancy at will." (Webster's New Internat. Dict. (3d ed. 1961) p. 1560.) The association of "occupancy" with real property in the instant case is reinforced by its conjunction with the words "wrongful entry or eviction." "Eviction" is a term almost exclusively associated with real property. (See e.g., *Clark* v. *Spiegel* (1971) 22 Cal.App.3d 74, 80 [99 Cal.Rptr. 86].) We perceive that the "personal injury" contemplated by the business liability policies

---

[4]"Advertising: . . . [T]he action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public esp. by means of printed or broadcast paid announcements." (Webster's New Internat. Dict. (3d ed. 1961) p. 31.)

was the "wrongful entry, eviction or other invasion of the right to private occupancy" relating to some interest in real property. The Calsat complaint alleges no invasion of any interest attendant to the possession of real property. This court " 'will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed.' " (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641].) The Calsat complaint does not present a case for liability based on an "invasion of the right of private occupancy" with the meaning of the business liability policies.

## II

The coverage provided to Nichols and his wife in their homeowner's policy is considerably different.[5] United Pacific agreed to indemnify the Nichols for all damages "because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." Conceding this indemnity provision is inapplicable, the Nichols rely on a separate provision, wherein United Pacific agreed "to defend any suit against the Insured seeking damages on account of such bodily injury, *personal injury,* or property damage, . . ." (Italics added.)[6] The Nichols thus contend that although United Pacific has no obligation to indemnify them from the Calsat suit, it has a duty to defend them against the action. We disagree.

 "The rule is settled that an insurer is under a duty to defend a claim whenever the allegations of a complaint would support a recovery upon a risk covered by the policy." (*Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553, 563 [91 Cal.Rptr. 153, 476 P.2d 825].) The Nichols concede there is no possibility of indemnity under the policy. They urge the "duty to defend" clause is broader than the indemnity provision. This is true as a general proposition (*Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co., supra,* 76 Cal.App.3d at p. 278), but is not a rule without exceptions. The duty to defend under the policy exists " 'even if any of the allegations of the suit are groundless, false or fraudulent, . . .' " Accordingly, a defense must be provided in certain circumstances even though it is ultimately determined that no liability exists. However, the duty to defend a suit which raises a *possibility* of liability, but is

[5]Appellants do not contest that only Nichols and his wife are named insureds under the United Pacific policy. Accordingly, summary judgment was properly granted as to Nichols' business (Phil's Antenna Service) and his employee (Darrow).

[6]An indorsement to the policy amended the duty to defend to delete the reference to "personal injury." A disputed issue of fact exists over whether Nichols received the amendment prior to being served with the Calsat lawsuit. United Pacific, however, has elected *not* to rely on the amendment and urges it is not required to defend Nichols under the original insuring agreement.

eventually shown to be groundless, does not equate with a duty to defend a suit which raises *no* potential liability. "The 'groundless, false or fraudulent' clause . . . does not extend the obligation to defend without limits; it includes only defense to those actions of the nature and kind covered by the policy." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 274.) In this case, the risk covered by the homeowner's policy was any action which sought damages for bodily injury or property damage. The Calsat suit was not such an action. As there was no potential for liability under the homeowner's policy, there was no duty to defend.

The Nichols contend, however, that the duty to defend personal injury actions was an additional promise, beyond the liability coverage.[7] The policy was a California Standard Form Fire Insurance Policy (see Ins. Code, § 2070 et seq.), to which the insurer may add clauses granting the insured privileges not otherwise provided. (Ins. Code, § 2079, subd. (c).) We find no basis for the assertion that the intent of the "personal injury" clause was to give the Nichols an additional benefit. The phrase appears in the "Personal Liability" coverage. After obligating itself to pay all sums assessed against the insured "as damages because of bodily injury or property damage," the insurer states its duty "to defend any suit against the Insured seeking damages on account of *such* bodily injury, personal injury, or property damage, . . ." (Italics added.) The obvious intent was to limit the duty to defend to those enumerated suits where the insurer had a risk of indemnity. Moreover, the Nichols could have no reasonable expectation of any other type of coverage. This is a *homeowner's* policy. It specifically excludes coverage for "bodily injury or property damage arising out of business pursuits of any insured . . . ." It was undoubtedly for this very reason that Nichols procured a separate business liability policy to cover suits arising from his business. Nichols could not reasonably expect protection under his homeowner's policy for the business injury alleged by Calsat. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 274-275.) We conclude the trial court properly granted summary judgment to United Pacific, absolving it of any duty to defend the Nichols.

### III

Our conclusion that the Calsat complaint does not allege an injury giving rise to a duty to defend or indemnify the appellants on the part of any of the insurers renders it unnecessary for us to determine whether the intentional conduct alleged by Calsat constitutes an "occurrence" within the meaning of the policies.[8] This conclusion also obviates the necessity to

---

[7]The United Pacific policy did not define what was meant by "personal injury."

[8]We note parenthetically the issue appears similar to that presented in *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pages 271-274.

consider the contribution issue presented by the cross-appeals. The appellants in this case determined to engage in a business which Calsat alleged amounted to video piracy. The loss of economic benefits alleged by Calsat were not of a type covered by appellants' insurance policies, nor could appellants have reasonably expected protection under the policies for such conduct. This court, as was the trial court, is unwilling to torture the straightforward and ordinary provisions of these policies to fasten upon the insurers a liability they have not assumed. (*Giddings* v. *Industrial Indemnity Co., supra,* 112 Cal.App.3d at p. 219.)

The summary judgment and orders of dismissal are affirmed.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied July 23, 1985, and the petition of appellants Ralph Nichols, Loy Nichols, Adolph Gower, Jr., and Stan Darrow for review by the Supreme Court was denied September 11, 1985.