**AETNA CASUALTY AND SURETY COMPANY, INC.,**
Plaintiff–Appellee,

v.

**CENTENNIAL INSURANCE COMPANY; Atlantic Mutual Insurance Company,**
Defendants–Appellants,

**Great American Insurance Company; the Cincinnati Insurance Company,**
Defendants–Appellees.

No. 86–6740.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1987.

Decided Feb. 1, 1988.

Roy G. Weatherup, Haight, Dickson, Brown & Bonesteel, Santa Monica, Cal., for plaintiff-appellee.

Lee P. O'Connor, O'Connor & Schmeltzer, Tustin, Cal., Joy Smathers, Veatch, Carlson, Grogan, & Nelson, Los Angeles, Cal., for defendants-appellees.

Andre E. Jardini, Knapp, Petersen & Clarke, Universal City, Cal., for defendants-appellants.

Before TANG, WIGGINS and KOZINSKI, Circuit Judges.

WIGGINS, Circuit Judge:

Appellants, excess insurers Centennial Insurance Company ("Centennial") and Atlantic Mutual Insurance Company ("Atlantic"), appeal a summary judgment for primary insurers Cincinnati Insurance Company ("Cincinnati") and Great American Insurance Company ("Great American"). In the underlying action, Aetna Casualty & Surety Company ("Aetna"), an excess insurer, defended International Identification, Inc. against a claim brought by Allflex Tag Co. Aetna then filed suit against the other insurance companies above claiming that they should be responsible for defending International Identification against Allflex's charges that it had engaged in unfair commercial practices. Aetna thus seeks contribution for the costs of International Identification's defense. The district court held that the excess insurers, Centennial, Atlantic, and Aetna, had the duty to defend, while the primary insurers, Great American and Cincinnati, had no such duty.

Centennial and Atlantic contend that International Identification's primary insurance policies, by their very terms, require

Cincinnati and Great American to defend the underlying action. We affirm the district court's ruling that the primary insurers had no duty to defend the suit.

## BACKGROUND

### A. *The Parties and Policies*

International Identification, Inc., is in the business of making identification tags for animals and livestock. International Identification took out a number of insurance policies during the relevant time period for the underlying action. Cincinnati insured International Identification for bodily injury and property damage liability between June, 1974 and June, 1979 and again between June, 1979 and June, 1984. Under the personal injury liability endorsement of this policy, limited to $300,000, Cincinnati promised to defend against claims, and indemnify damages incurred by International Identification, arising out of the following offenses committed in the conduct of International Identification's business:

> Group B—The publication or utterance of a libel or slander or of any other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of a named insured[.]

Great American provided coverage to International Identification between June, 1980 and June, 1981. The personal injury liability endorsement, limited to $500,000, was identical to Cincinnati's endorsement. Both of these policies excluded "personal injury arising out of a publication or utterance described in Group B concerning any organization or business enterprise, or its products or services made by or at the discretion of any insured with knowledge of the falsity thereof."

Centennial and Atlantic provided excess or umbrella coverage to International Identification between June, 1977 and June, 1980 and again between June, 1980 and June, 1981. The limits of each policy were $1,000,000. Centennial and Atlantic agreed to indemnify International Identification

for the "ultimate net loss in excess of the retained limit," which was defined as the greater of the total of the applicable limits of various other insurance policies collectible by International Identification, or the amount not covered by the other policies. Centennial and Atlantic also promised to provide the insured with a defense to claims for personal injury or property damage liability, or advertising liability, which were "not covered" by certain other insurance policies, including those issued by Cincinnati and Great American. "Personal Injury" was defined in the policies as a liability for damages because of: "The publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of rights of privacy, except when any of the foregoing of this part ... arises out of the insured's advertising activities ..." The umbrella policy also covered "advertising liability" which was defined as liability for damages because of:

(a) libel, slander or defamation;

(b) infringement of copyright or of title or of slogan;

(c) piracy or unfair competition or idea misappropriation under an implied contract;

(d) invasion of rights of privacy; which occur during a policy period, and arising out of the named insured's advertising activities.

The policies excluded liability for "infringement of registered trademark, service mark or trade name by use thereof as the registered trademark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans," or for "incorrect description of any article or commodity."

Lastly, Aetna provided excess or umbrella coverage to International Identification between June, 1981 and June, 1982, covering liability for personal injury, property damage, or advertising offense. Its policy limits were $1,000,000. Personal injury was defined, in part, as "except with respect to injury occurring in the course of a named insured's advertising activities, inju-

ry arising out of the publication or utterance of a libel or slander or other defamatory or disparaging material ..." But, like the Atlantic and Centennial policies, Aetna also provided coverage for advertising offenses which were defined as: "Injury occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan (other than a patent)." Aetna, like the other excess insurers (Centennial and Atlantic), promised to provide a defense to any suit seeking damages which were not payable under the terms of certain other insurance policies, including the policies issued by Cincinnati and Great American, either "because such damages are not covered thereunder, or because of exhaustion of an underlying aggregate limit of liability by payment of claims."

## B. *The Underlying Action*

On March 24, 1982, an action was filed against International Identification in the United States District Court for the Central District of California. *Allflex Tag Company, Inc. and Delta Plastics, Ltd. v. International Identification, Inc. d/b/a National Band and Tag Co.* (civil action No. 82–1444 WPG). Allflex and its New Zealand parent company, Delta Plastics, claimed that International Identification had engaged in unfair competition by advertising Allflex's distinctive animal tags as their own. Allflex's original complaint asserted four claims for relief. The first cause of action was for false designation of origin and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982). The second cause of action was for common law trade mark infringement, based on International Identification's appropriation of the distinctive shape of Allflex's animal tag. Allflex's third claim for relief was for dilution of distinctiveness of a trade mark and injury to business reputation. Their fourth cause of action simply averred unfair competition. Allflex's First Amended Complaint was not substantially different from the original complaint, except that the continu-

ing nature of International Identification's conduct was stressed. In the Second Amended Complaint, however, the third cause of action was refined to encompass a pendent state claim under Cal.Bus. & Prof. Code § 14330 (West 1987).

## C. *This Case*

Aetna accepted the defense of International Identification and admitted coverage. All of the other insurers refused to participate in the defense. Aetna filed this diversity action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, on April 27, 1984, seeking contribution by each of the primary and excess insurers for the defense of International Identification in the underlying action. On February 24, 1986, Aetna moved for summary judgment. Aetna asserted that the primary insurers had a duty to defend International Identification because the complaint in the underlying action sought damages which were potentially covered under the portions of the policies which provided coverage for the publication of defamatory or disparaging material. Aetna also noted that the primary insurers were estopped from relying upon the exclusions in their policies for advertising liability, because they failed to notify International Identification that they were refusing its defense based upon any exclusion in their policies. In addition, Aetna argued that there was a potential of coverage under the excess policies, because the complaint in the underlying action sought damages covered under the advertising liability portion of the policies and that the excess insurers were estopped from denying coverage based upon their failure to advise the insured that their claimed lack of coverage was based upon exclusionary language.

The district court granted the motion as to Centennial and Atlantic, but denied the motion as to the remaining defendants. The court ruled on summary judgment that Great American and Cincinnati had no duty to defend International Identification in the Allflex action. However, Centennial and Atlantic did have a duty to defend, with Aetna, International Identification in this

action. Judge Gray, after oral argument, ruled that the primary insurance policies did not cover the sort of liability that All-flex had claimed against International Identification. As for the excess insurers, the district court rejected the argument that the exception in the excess policies regarding registered trade marks applied in this case. Centennial and Atlantic timely appealed.

## ANALYSIS

### A. *Standard of Review*

A district court's grant of a motion for summary judgment is reviewed by the appellate court *de novo*. The general standard that an appellate court applies in reviewing the grant of such a motion is the same as that employed by the district court initially under Fed.R.Civ.P. 56(c). *Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1078–79 (9th Cir.1985); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir.1985). Rule 56(c) states that summary judgment is proper when the pleadings and discovery, read in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

### B. *Obligation of Primary Insurers to Defend*

■ This diversity case is governed by California law. An insurer's duty to defend must be analyzed and determined on the basis of any potential liability arising from the facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense. *CNA Casualty of California v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 606, 222 Cal. Rptr. 276, 278–79 (1986). The insurer's obligation to defend is not dependent on the facts contained in the complaint alone; the insurer must furnish a defense when it learns of facts from *any* source that creates a potential of liability under its policy. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275–77, 54 Cal.Rptr. 104, 113, 419 P.2d 168, 177 (1966). Indeed, the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured even though it has independent knowledge of facts not in the pleadings that establish that the claim is *not* covered. *CNA Casualty*, 176 Cal.App.3d at 606, 222 Cal.Rptr. at 279. Where there is doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured. *Eichler Homes, Inc. v. Underwriters at Lloyd's, London*, 238 Cal.App. 2d 532, 538, 47 Cal.Rptr. 843, 847 (1965). Nevertheless, the duty to defend is not absolute. "[T]he duty to defend a suit which raises a *possibility* of liability, but is eventually shown to be groundless, does not equate with a duty to defend a suit which raises *no* potential liability." *Nichols v. Great American Ins. Companies*, 169 Cal.App.3d 766, 776–77, 215 Cal.Rptr. 416, 422 (1985).

The crux of this appeal is Centennial's and Atlantic's contention that the kinds of injuries alleged by Allflex in its suit against International Identification were within the risks covered by the primary insurance policies. The question is, therefore, whether any of Allflex's causes of action raised a possibility of liability under Cincinnati's and Great American's primary insurance policies, thus triggering a duty to defend. These primary policies covered liability for "the publication or utterance of a libel or slander or of other defamatory or disparaging material, ... except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of a named insured." To prevail on this issue, appellants must show that (1) Allflex's causes of action are encompassed within this primary coverage, and (2) the policy's exceptions do not apply or do not operate as a matter of law.

#### 1. *Allflex's Causes of Action and the Primary Coverage.*

Appellants suggest that Allflex's causes of action could be variously characterized as (a) libel and slander, (b) slander of title, (c) trade libel, or (d) disparagement. If any

of Allflex's causes of action can be described in this way, the possibility of liability under the primary policies would have arisen, thus triggering the duty to defend. *Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guar. Co., Inc.*, 76 Cal.App.3d 272, 278, 142 Cal.Rptr. 681, 685 (1977).

■ Allflex's first cause of action, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125, has no arguable relation to any of the primary coverages, nor does appellant suggest there is. Likewise, the second cause of action, common law trade mark infringement, is not covered under the rubric of "publication or utterance of a libel or slander or of other defamatory or disparaging material." In its fourth count, Allflex put forward a generalized unfair-competition ground, premised on International Identification's "intent of trading upon and profiting from the reputation and good will that [Allflex] owns from their extensive and long standing marketing of products...."

■ Appellants contend that this fourth cause of action raises a form of trade libel, which they suggest is encompassed within the primary coverage. Trade libel is defined as "an intentional disparagement of the quality of property, which results in pecuniary damage...." *Erlich v. Etner*, 224 Cal.App.2d 69, 73, 36 Cal.Rptr. 256, 258 (1964). The cause of action for trade libel thus requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages. Trade libel is not, however, a true libel and is not actionable as defamation. *Polygram Records, Inc. v. Superior Court*, 170 Cal. App.3d 543, 548–49, 216 Cal.Rptr. 252, 255 (1985). It is more akin to unfair competition. 6 Cal.Jur.3d *Assault & Other Willful Torts* § 162 (1973). Trade libel and product disparagement are injurious falsehoods that interfere with business. Unlike classic defamation, they are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business. *Guess,*

*Inc. v. Superior Court*, 176 Cal.App.3d 473, 479, 222 Cal.Rptr. 79, 83 (1986).

We are obligated to follow the California court's interpretation of an identical insurance policy. *Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1029 (9th Cir.1981). In *Nichols*, the California Court of Appeals had under review the same policy at issue in our case. In the underlying action, the insured (who sold devices designed to intercept pay television signals) was sued for airwave piracy by the supplier of a pay television subscription service. The court held that the complaint did not make out a case of trade libel, because they did not allege any statement or conduct by defendants which directly cast aspersions on their business. *Nichols*, 169 Cal.App.3d at 774, 215 Cal.Rptr. at 420. The court implicitly recognized that trade libel or disparagement was encompassed within the policy. *Id.* at 772–73, 215 Cal.Rptr. at 419. We are faced then with precisely the same inquiry as the *Nichols* court, that is, determining whether the underlying action raised the possibility of coverage.

■ The gravamen of Allflex's charges against International Identification is that they "palmed off" Allflex's products as their own. Appellants suggest that this is enough to make out a trade libel action. This contention was rejected in the *Nichols* case, which we follow here. Allflex did not, as appellants suggest, charge that International Identification had disparaged their products, but rather, had appropriated them for their own use. Although trade libel is covered under the primary policies, we hold that Allflex's action does not raise a possibility of liability on this ground.

■ Centennial and Atlantic also suggest that Allflex's third cause of action, denominated "injury to business reputation," makes out a case of disparagement. In Allflex's Second Amended Complaint this cause of action was converted into a pendent state claim of injury to business reputation under Cal.Bus. & Prof.Code § 14330. What matters, again, is whether the "complaint contains language creating a potential of liability under an insurance policy." *CNA Casualty*, 176 Cal.App.3d at

606, 222 Cal.Rptr. at 279 (1986). Injury to business reputation, like a charge of trade libel, would seem to be covered under the primary policy. Here again, though, appellants must show that the alleged inferior quality of International Identification's product constitutes disparagement, and thus an injury to Allflex's business reputation. Courts have, however, ruled that copying another's goods, except as to quality, constitutes a tort of unfair competition or trade mark infringement, not disparagement. *Haeger Potteries v. Gilner Potteries*, 123 F.Supp. 261, 270 (S.D.Cal.1954). The cases which appellants cite for the proposition that copying another company's goods constitutes disparagement, are inapposite because even if International Identification's animal tags were inferior in quality (which Allflex never suggested), this does not constitute a tort coverable under the policy. We, therefore, hold that none of Allflex's causes of action raised the possibility of coverage under the primary policies.

### 2. *Exclusions of Liability in the Primary Policies.*

■ Even if we were to adopt the appellants' argument that Allflex's action was covered under the terms of the primary policies, we would be obliged to rule that those very same policies explicitly excluded liability. Both policies exclude liability where "personal injury arising out of a publication or utterance described in Group B concerning any organization or business enterprise or its products or services made by or at the discretion of any insured with the knowledge of the falsity thereof," and for any publications or utterances "in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of a named insured." So, even if trade disparagement was a possibility raised by Allflex's complaint, there would be no duty to indemnify if International Identification had engaged intentionally in these acts or had done so through advertising activities conducted. Both of these exceptions apply in this case.

Aetna argues that the primary insurers may not rely upon these exceptions because they failed to do so at the time they rejected the tender of defense by the insured. They suggest that the law is settled that an insurer has the duty to thoroughly investigate an insured's claim by inquiring fully into the possible theories that might support the claim. Nevertheless, where the complaint does not plead facts raising potential liability there is no duty to investigate the lawsuit and so waiver is not an issue. *Continental Casualty*, 763 F.2d at 1083–84.

Appellants suggest that not all of the injuries that Allflex complained of were related to the "advertising, broadcasting or telecasting activities" of International Identification. Appellants argue that "advertising" should be construed narrowly, and thus not all of Allflex's charges would be included. But it seems that those complaints which were not considered related to advertising (those related more to the offering and selling of goods), would come under the other exception in the primary insurance policy, that dealing with intentional actions. Allflex alleges that International Identification intentionally engaged in unfair competition, common law trade mark infringement and injury to business reputation. Even if a case for trade disparagement was made out, it would be excluded by the intentional acts provision of the policy. Although trade disparagement need not be an intentional tort, *In re Matter of Kasler*, 611 F.2d 308, 311–12 (9th Cir.1979); *Nichols*, 169 Cal.App.3d at 773, 215 Cal.Rptr. at 419–20; *Restatement (Second) of Torts*, § 629, comment f (1977), the only possibility raised factually by Allflex's complaint is that International Identification acted intentionally.

Appellants argue that an insurer should not be able to "decline [a] defense where the application of an exclusion was only a possibility." *CNA Casualty*, 176 Cal.App. 3d at 613, 222 Cal.Rptr. at 285. It seems here, however, that the application of the two exclusions in the primary policies was not a possibility, but a reality.

Appellants have contended, as a general matter, that even if the primary insurers had no duty to indemnify International

Identification they did have a duty to defend. As noted above, the duty to defend *is* broader than the duty to indemnify, but it is not absolute. We hold that the primary insurers have shown that Allflex's complaint against International Identification raised no possibility of liability under their policies.

## CONCLUSION

This lawsuit has already generated nearly $900,000 in attorneys' fees. This is so, despite the fact that the underlying action between Allflex and International Identification settled for approximately $25,000. To foreclose any further wrangling, we rule that the parties will bear their own costs on this appeal.

The district court's grant of summary judgment as to Centennial and Atlantic, along with its denial as to the remaining defendants, is **AFFIRMED.**