AMERICAN STATES INSURANCE COMPANY and American Economy Insurance Company, Plaintiffs,

v.

CANYON CREEK dba Napa Estates Venture, Dr. Michael Pashley, Joseph Pashley, Eleanor Bender, Patricia Van Abraham, Hal Beckstrom, Homeowners for Honesty in Real Estate, an unincorporated association composed of: Richard Adams, Cathy De Rose, Patrick Fredriksson, Mary Fredriksson, Roger Gilbertson, Clara Gilbertson, Christopher Hylton, Herbert Jenson, Jackie Jenson, Michael Read, Glen Russell, Suphoora Russell, Gerald Seegmiller, Marcie Seegmiller, C.D. Seegmiller, F.L. Seegmiller, Nathaniel Simms, Emma Simms, Charles White, Dee White, Joseph Winterburn, Katharyne Winterburn, Alberto Calvillo, Theresa Calvillo, Danny R. Reno, Katheryn A. Reno, Alberto Reyes, Rosario Reyes, and the People of the State of California, Defendants.

No. C–90–2376 WHO.

United States District Court, N.D. California.

June 27, 1991.

Kathleen E. Hegen, Boornazian Jensen & Garthe, Oakland, Cal., for plaintiffs.

William K. Blakemore, Barry Vogel, Donohue & Callahan, Sacramento, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this declaratory relief action filed in federal court, plaintiffs, American States Insurance Company and American Economy. Insurance Company ("American States"), seek a declaration as to their rights and obligations under two insurance policies issued to defendants Canyon Creek, doing business as Napa Estates Venture, Dr. Michael Pashley, Joseph Pashley, and Eleanor Bender (collectively "NEV"). Specifically, NEV has been sued in the Superior Court for the County of Napa by four different groups of homeowners and the Napa County District Attorney's office for intentional and negligent misrepresentation and unfair business practices arising out of its involvement in the sale of manufactured housing in the Napa area.[1]

American States filed a motion for summary judgment in this Court, claiming that under the terms of the policies it issued it has no duty to defend or indemnify NEV in the underlying state court actions. NEV responded to American States' motion by filing a motion to dismiss or stay the proceedings and by filing a cross-motion for summary judgment contending that American States does owe NEV a duty to defend and indemnify under the policies.

Having considered the pleadings and oral argument of counsel, the Court, for the reasons discussed herein, finds that American States does have a duty to defend NEV under one of the policies. The Court, therefore, denies NEV's motion to dismiss or stay this action, grants American States' motion for summary judgment in part and denies it in part, and grants NEV's cross-

---

1. American States has named the homeowner groups and the individual purchasers as defendants in this action because they are potential judgment creditors in the proceeds of the policies. But to date, it appears that neither the groups nor the individuals have been served.

motion for summary judgment in part and denies it in part.

## I.

NEV is a California general partnership engaged in the sale of manufactured housing in Napa, California. In the underlying state court litigation, four different groups of homeowners filed essentially identical complaints alleging that NEV knowingly or negligently made false statements in connection with the sale of manufactured housing that materially affected the value of their bargain. In addition, the District Attorney for Napa County has alleged a cause of action against NEV for violation of California's unfair competition statute (California Business and Professional Code § 17200), seeking injunctive relief and restitution.

When NEV was served with the complaints in the underlying actions, it tendered defense of the actions to American States. American States assumed the defense of NEV under a reservation of rights. It then filed the instant action seeking a declaration of its rights and obligations under the policies at issue.

The first policy at issue ("Policy 1"), a comprehensive general liability policy, was issued on October 29, 1985, and expired one year later. Upon its expiration, American States issued a new policy ("Policy 2") that contained a few differences in the insuring provisions. Both policies are applicable to these proceedings.

Policy 1 provides that American States "will pay on behalf of [NEV] all sums which [NEV] shall become legally obligated to pay as damages because of ... bodily injury or ... property damage ... caused by an occurrence...." Exhibits in Support of Motion for Summary Judgment filed Dec. 18, 1990, Exh. A ("Policy 1") at 25. An "occurrence" is defined as an "accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 11.

Additionally, an expanded coverage endorsement to Policy 1 provided coverage for personal injury or advertising injury.

Personal injury is defined as "injury arising out of one or more of the following offenses committed during the policy period: (1) false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry or eviction *or other invasion of the right of private occupancy* ...." *Id.* at 34 (emphasis added). In Policy 2, however, the phrase "or other invasion of the right of private occupancy" was deleted. As will be shown, this is of great significance.

Advertising injury is defined under Policy 1 as "injury arising out of ... libel, slander, defamation, violation of right to privacy, piracy, *unfair competition,* or infringement of copyright, title or slogan." Policy 1 at 34 (emphasis added)

The only differences in coverage under Policy 1 and Policy 2 germane to these proceedings is that the definition of advertising injury in Policy 2 does not provide coverage for "unfair competition," and the definition of personal injury does not contain the phrase "or other invasion of property."

## II.

█ NEV contends first that the Court should either dismiss or stay American States' declaratory relief action because proceeding in this matter will prejudice it in its state court proceeding. NEV relies on the generally accepted rule that a federal court should decline to exercise diversity jurisdiction over declaratory relief actions when the same issues of state law will necessarily be determined in a pending state suit. *See, Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Here, however, the issues necessary to decide this motion are not the same as those necessary to adjudicate the pending state court actions.

For example, defendants argue that to decide the pending summary judgment motions, it will be necessary to finally adjudicate the existence of liability on the part of the insured. This is simply not true. To decide whether coverage exists under the applicable policies, the Court merely must

determine whether the allegations in the complaints in the state court actions, *even if accepted as true*, give rise to coverage under the policies at issue. In ruling one way or another on this issue, the Court is in no way reaching the merits of the underlying complaints. For this reason, the Court sees no compelling argument why it should dismiss or stay this action. Accordingly, the Court denies NEV's motion to dismiss or stay the action.

### III.

■ Because the action is here on the basis of diversity jurisdiction, the substantive law of California applies. *St. Paul Fire & Marine Ins. Co. v. Weiner,* 606 F.2d 864 (9th Cir.1979). To determine whether an insurer has a duty to defend under California law, the Court must look at the complaints in the underlying actions to determine whether any of the allegations in those complaints state facts even potentially within the coverage of the insurance policy. *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Additionally, the Court must also consider facts outside the complaints that are known to the insurer and indicate the existence of a duty to defend. *Westfield Ins. Co. v. TWT, Inc.,* 723 F.Supp. 492 (N.D.Cal.1989).

### A.

As noted above, both policies provide coverage for property damage or bodily injury arising out of an "occurrence." Although the parties have given short shrift to the question of whether damages suffered as a result of intentional or negligent misrepresentations made in conjunction with the purchase of property satisfy the above definitions, this seems to the Court to be a threshold issue of major significance.

■ It is well established that intentional wrongdoing such as fraud is not considered an "occurrence" as defined in the applicable policies. Furthermore, even though framed as a negligence action, alle-

gations of negligent misrepresentation have likewise been held not to constitute an "occurrence."

In *Safeco Insurance Co. of America v. Andrews,* 915 F.2d 500 (9th Cir.1990), the court held that alleged misrepresentations regarding the condition of certain real property, made through failure to discover nonobvious defects, did not constitute an "occurrence" as defined in an identically worded policy as the ones at issue here. *Id.* at 502. This is consistent with the view espoused by California appellate courts that negligent misrepresentation falls within the rubric of fraud and not ordinary negligence. *See, Blankenheim v. E.F. Hutton & Co.,* 217 Cal.App.3d 1463, 1472–73, 266 Cal.Rptr. 593, 599 (1990). In fact, Sections 1572 and 1710 of the California Civil Code specifically define fraud to include negligent misrepresentation.

■ Thus, the Court concludes that the actions of NEV that are alleged to give rise to coverage do not constitute an "occurrence" as defined under the policy. Furthermore, strictly economic losses, such as loss of the benefit of the bargain, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy. *Giddings v. Indus. Indem. Co.,* 112 Cal.App.3d 213, 219, 169 Cal.Rptr. 278, 281 (1981).

Illustrative of this point is the recent case of *Allstate Insurance Co. v. Miller,* 743 F.Supp. 723 (N.D.Cal.1990). There, Judge Conti was presented with the issue of whether allegations of negligent misrepresentation in the purchase of real property gave rise to coverage under similar policies. In finding that the policies did not provide coverage, Judge Conti noted that the California Supreme Court has held that Section 3343 [2] of the California Civil Code, which generally limits a purchaser's recovery to economic loss, is the exclusive standard of damages in an action for fraud in the sale of real estate. *Id.* at 726. Judge Conti then concluded that because the only

---

**2.** Section 3343 provides, in pertinent part, that "[o]ne defrauded in the purchase ... of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received ..."

damage recoverable under the complaint was for loss of the benefit of the bargain, a strictly economic loss, the insurer was under no duty to defend the underlying actions. *Id.*

■ Here, the underlying civil actions likewise seek recovery for negligent misrepresentation in the sale of real estate. Specifically, the complaints allege that NEV made certain oral representations to plaintiffs, without reasonable grounds for believing them to be true, for the purpose of inducing plaintiffs to purchase certain homes. The complaints further allege that the actual value of the property purchased from NEV was at least $500,000 less than the amount paid. The type of damage being sought is clearly economic in nature and, thus, not property damage as defined in the policies. Therefore, the Court concludes that the underlying complaints for intentional and negligent misrepresentation do not constitute property damage as defined in the policies and do not give rise to the potentiality of coverage.

### B.

■ NEV next submits that although not sought in the complaints, plaintiffs in the Napa County case, by way of answers to interrogatories, have indicated an intent to claim damages for emotional distress allegedly suffered as a result of the conduct of NEV. NEV contends that this creates the potential for coverage under the policies' provisions concerning bodily injury. While it is true that facts outside the complaints can give rise to the potential for liability, *see, Westfield*, 723 F.Supp. at 495, in this case the specter of a complaint for emotional distress damages does not give rise to the potentiality for coverage.

In *Allstate*, the court noted that:

While [a] cause of action for negligent infliction of emotional distress might in other circumstances state a claim constituting "bodily injury" under the policy, here, since it springs from fraudulent conduct in the sale of property, it is limited by the controlling legislative restriction on damages found in § 3343 of the Civil Code.

743 F.Supp. at 727. The court then pointed out that Section 3343 consistently has been interpreted to preclude recovery of damages for emotional distress. One such interpretation occurred in the recent case of *Kruse v. Bank of America*, 202 Cal.App.3d 38, 248 Cal.Rptr. 217 (1988). In *Kruse*, the court expressly held that emotional distress damages are not recoverable as an element of damages for fraud. *Id.* 202 Cal.App.3d at 67, 248 Cal.Rptr. at 234.

NEV, in addition to attacking the rationale in *Allstate*, purports to rely on *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal.App.3d 412, 174 Cal. Rptr. 608 (1981), for the proposition that California law does allow emotional distress damages as an element of fraud causes of action.

This case is inapposite. The *Sprague* court did *not* hold that emotional distress damages are available under Section 3343, but rather, held that such damages *are* recoverable in a tort action for deceit under Section 1709 of the California Civil Code. Thus, the crucial question is whether the underlying complaints are properly characterized as an action under Sections 3343 or 1709. The answer quite clearly is that the underlying complaints are governed by Section 3343.

By its express terms, Section 3343 applies to actions where a party has been "defrauded in the purchase, sale or exchange of property...." As the court noted in *Allstate*, California courts consistently have held that actions for fraud in connection with the sale of real property are governed by Section 3343, and not Section 1709. More important, the Supreme Court of California has noted the distinction between the types of damages recoverable in fraud cases involving the purchase or sale of property and those cases that do not. *Stout v. Turney*, 22 Cal.3d 718, 726, 150 Cal.Rptr. 637, 641, 586 P.2d 1228, 1232 (1978). In those cases that do involve the purchase or sale of property, the correct measure of damages is contained in Section 3343.

Here, the underlying complaints quite clearly involve allegations of fraud attendant to the sale and purchase of real property. Thus, under well-established precedent, the underlying actions do not contain the potentiality for coverage under the bodily injury clause of the policies.

### C.

In addition to the general insuring provisions discussed above, the policies issued by American States also contain an endorsement providing coverage for "advertising injury." Advertising injury is defined in Policy 1, effective from 1985 through 1986, as an injury arising out of "libel, slander, defamation, violation of right of privacy, piracy, *unfair competition,* or infringement of copyright, title or slogan." Policy 1 at 34 (emphasis added). In Policy 2, effective from 1986 through 1987, American States deleted "unfair competition" from the definition of advertising injury. NEV claims that Policy 1 provides coverage based on the advertising injury coverage for unfair competition. The Court agrees.

Over the years, two basic meanings of the term "unfair competition" have emerged in the case law. Under the traditional common law view, unfair competition involved situations where one competitor harmed another by "palming off" his goods as those of the other. *Pine Top Ins. Co. v. Public Util. Dist. No. 1 of Chelan City,* 676 F.Supp. 212, 216 (E.D.Wash.1987). Under this view, unfair competition was implicated only in situations involving competitors. But in California, the term has been interpreted to include any fraudulent or unfair business practice perpetrated against competitors and the general public alike. *Barquis v. Merchants Collection Ass'n of Oakland,* 7 Cal.3d 94, 109–12, 101 Cal.Rptr. 745, 755–58, 496 P.2d 817, 827–30 (1972).

■ NEV urges this Court to apply California's broad definition to the term in the policy at issue. Until quite recently, the trend has been to construe narrowly the term "unfair competition" in insurance policies. Thus, courts have held that for pur-

poses of policy interpretation, the common law definition of unfair competition applies. *See, Westfield,* 723 F.Supp. at 496; *see also, Pine Top,* 676 F.Supp. at 216.

More recently, however, the term "unfair competition" has been construed to encompass California's broader statutory definition. *See Keating v. National Union Fire Ins. Co.,* 754 F.Supp. 1431 (C.D.Cal.1990) (finding that the term "unfair competition," as used in insurance policies, means unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue, or misleading advertising).

The differing views taken by courts in interpreting the term "unfair competition" clearly shows that the term is ambiguous. " 'A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable.' " *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 562, 718 P.2d 920, 924–25 (1986) (quoting *Delgado v. Heritage Life Ins. Co.,* 157 Cal. App.3d 262, 271, 203 Cal.Rptr. 672 (1984). Here, both the common law definition of "unfair competition" and California's broader statutory definition are reasonable interpretations, as evidenced by the fact that courts have adopted both definitions of the term unfair competition. That being the case, the Court must apply the canon of contract interpretation that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. *See Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807–08, 180 Cal.Rptr. 628, 632, 640 P.2d 764, 768 (1982).

Furthermore, as the *Keating* court recognized, if the insurer had intended to limit coverage for unfair competition to the common law tort of "palming off" one's goods, it could have done so explicitly. Having failed to do so, however, the Court must resolve the ambiguity in favor of the insured. Thus, the Court finds that the term "unfair competition," as used in Policy 1, includes the broader California statutory definition.

■ The above notwithstanding, American States argues that NEV was not en-

gaged in "advertising activities." The term advertising activity is not defined in the policies nor does American States propound any definition. But here it does appear that NEV was engaged in advertising activity.

"Words in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them." *Pisciotta,* 30 Cal.3d at 807, 180 Cal.Rptr. at 631, 640 P.2d at 767. Webster's Third New International Dictionary defines advertising as "the action of calling something ... to the attention of the public esp. by means of printed or broadcast paid announcements." To advertise, however, is "[t]o advise, announce, apprise, commend, give notice of, inform, make known, publish" or to *"call to the public attention by any means whatsoever."* Black's Law Dictionary 50 (5th ed. 1979) (emphasis added). In California, even one-on-one oral representations have been found to constitute advertising. *See Nichols v. Great Am. Ins. Cos.,* 169 Cal.App.3d 766, 774–75, 215 Cal.Rptr. 416 (1985).

■ The Court is mindful of the fact that some courts in other jurisdictions have given the term a narrower definition and construed it to mean the widespread dissemination of promotional material to the public at large. *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425 (7th Cir.1985) (interpreting the term in the context of an exclusion). What is significant to note, however, is that in the cases that have given the term this narrow definition, the insurer was seeking a declaration that no coverage existed under an advertising injury *exclusion.* Because the term here is used within the context of the insuring provisions and not within an exclusion, the term should be interpreted broadly, with any doubts as to coverage resolved in favor of the insured. *Insurance Co. of Am. v. Sam Harris Constr. Co.,* 22 Cal.3d 409, 412–13, 149 Cal.Rptr. 292, 294, 583 P.2d 1335, 1337 (1978). Therefore, the Court will apply the broader definition of advertising adopted in *Nichols* and Black's Law Dictionary.

Applying these standards to the term in question, there can be no doubt that NEV was engaged in advertising activity. As set forth in the supplemental declaration of Michael Pashley, the managing partner of NEV, NEV frequently placed advertisements in newspapers and periodicals such as the San Francisco Chronicle and the New Homes Map Guide. Supplemental Declaration of Michael Pashley in Opposition to American States' Motion for Summary Judgment, filed Jan. 8, 1991, at 2. NEV also prepared and distributed packets of promotional materials to potential purchasers who toured the model homes. *Id.* Given this, the Court concludes that NEV was engaged in advertising activity and is, thus, entitled to coverage under Policy 1 in effect from 1985 through 1986.

### D.

■ The policies at issue also contained endorsements that provided coverage for personal injury. In Policy 1, personal injury is defined, *inter alia,* as "injury arising out of one or more of the following offenses committed during the policy period: (1) false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry or eviction or *other invasion of the right of private occupancy ...."* Policy 1 at 34 (emphasis added). Policy 2, on the other hand, defines personal injury as "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." Policy 2 at 10. Thus, Policy 2 deleted the phrase "other invasion of the right of private occupancy." That is crucial.

California courts consistently have held that language similar to that in the policy at issue covers only tort, and not contractual, liability. *Fragomeno v. Ins. Co. of the West,* 207 Cal.App.3d 822, 255 Cal.Rptr. 111, 114 (1989). Thus, American States is obligated to defend this action if any action of NEV constitutes, or potentially constitutes, "an invasion of the right of private occupancy which incurs tort liability as opposed to contract liability." 207 Cal.App.3d at 828, 255 Cal.Rptr. at 114. Here, NEV has been accused of just such a tortious invasion of property. Additionally, in sur-

veying prior California decisional law, the dissent in *Fragomeno* noted that the term "right to private occupancy" "clearly encompasses an insured's interference with another's 'right' to possess an interest in real property." 207 Cal.App.3d at 834, 255 Cal.Rptr. at 118 (Johnson, J., dissenting) (citing *Nichols,* 169 Cal.App.3d at 776, 215 Cal.Rptr. at 416 (complaint must allege an invasion of an interest attendant to the possession of real property)).

While American States contends that the complaints in the underlying actions expose NEV to only contractual liability, a close look at the allegations in the complaints shows otherwise.

Plaintiffs in the underlying state court actions allege that due to the misrepresentations made by NEV, they were led to believe that they would have the right to own and occupy the real property on which their mobile homes were located. Because these statements were false, however, the purchasers were not allowed to own and occupy the real property. Plaintiffs below also allege that they were told that Napa County officials would approve the housing development as a subdivision. Apparently this, too, was false. Plaintiffs do not frame these allegations as a breach of contract claim, but rather, as a fraud or negligent misrepresentation claim. NEV contends that these misrepresentations constitute a sufficient "interference with another's 'right' to possess an interest in real property," *id,* 207 Cal.App.3d at 834, 255 Cal.Rptr. at 118 (Johnson, J., dissenting), to constitute property damage as defined in the policies.

At a minimum, the term "other invasion of the right of private occupancy," is ambiguous. And as noted above, any ambiguity is to be resolved against the insurer. *Pisciotta,* 30 Cal.3d at 807–08, 180 Cal. Rptr. at 632, 640 P.2d at 768. If American States had intended to limit coverage under

the personal injury endorsement to physical invasions of real property, it could have done so expressly. In fact, as will be shown, American States did so limit the term in Policy 2 by amending the definition of personal injury in to encompass only the "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." Having failed to so limit the term in Policy 1 gives rise to the ambiguity in the term's meaning and must be resolved in favor of finding coverage.

Therefore, the Court agrees with NEV and finds, with respect to Policy 1, that the underlying complaints do give rise to the potentiality of coverage under the "personal injury" endorsement. With respect to Policy 2, however, the Court disagrees with NEV.

As just noted, the definition of personal injury in Policy 2 does not contain the phrase "other invasion of the right to private occupancy." Instead, personal injury is defined in Policy 2 as the "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." Policy 2 at 10. This definition clearly refers to some physical act of eviction or entry upon premises, such as trespassing. Nowhere in the underlying actions do plaintiffs allege any such physical invasion of their property. Thus, the Court concludes that Policy 1 does present the potentiality of coverage for the acts alleged in the underlying actions under the personal injury endorsement, but that Policy 2 does not provide coverage.[3]

### IV.

For the foregoing reasons,

IT IS HEREBY ORDERED that:

1. NEV's motion to dismiss or stay this action is DENIED.

---

3. With respect to the action filed by the Napa County District Attorney's office, American States correctly argues that because the action seeks injunctive relief and restitution on behalf of all those who were defrauded by NEV's allegedly unfair practices, coverage is expressly proscribed by Section 533.5 of the California Insurance Code, which prohibits an insurance policy from providing for coverage, indemnity, or a duty to defend for any claim in any civil or criminal action initiated by a district attorney seeking recovery of a fine, civil penalty, or restitution.

2. American States' motion for partial summary judgment is DENIED with respect to Policy 1 but GRANTED with respect to Policy 2.

3. NEV's cross-motion for summary judgment is GRANTED with respect to Policy 1 but DENIED with respect to Policy 2.