88–3673 Discount Plywood Centers, Inc. v. CIGNA Corporation, et al.

88–3674 Acme Corrugated Box Co. v. CIGNA Corporation, et al.

88–3677 P & J Casting Corp. v. Hartford Fire Insurance Company, et al.

88–3792 Henry L. Rosenfeld v. Hartford Fire Insurance Company, et al.

88–3793 Ace Check Cashing, Inc. v. Hartford Fire Insurance Company, et al.

88–4538 Glabman Paramount Furniture Mfg. Co., Inc. v. CIGNA Corporation, et al.

88–4560 Durawood, Inc. v. CIGNA Corporation, et al.

88–4561 Bensalem Township Authority v. CIGNA Corporation, et al.

88–4562 Keyboard Communications, Inc. v. CIGNA Corporation, et al.

88–4564 Carmella M. "Boots" Liberto v. Hartford Fire Insurance Company, et al.

88–4799 Les–Ray Bobcat, Inc., et al. v. Hartford Fire Insurance Company, et al.

88–4800 Jerry Grant Chemical Associates, Inc. v. Hartford Fire Insurance Company, et al.

89–1131 State of Louisiana, et al. v. Hartford Fire Insurance Company, et al.

**WESTFIELD INSURANCE COMPANY, Plaintiff,**

**v.**

**TWT, INC., et al., Defendants.**

**No. C–88–2389–CAL.**

United States District Court, N.D. California.

Oct. 12, 1989.

Lee S. Pantell, Thomas D. Reese and Lakin Spears, Palo Alto, Cal., for plaintiff.

Anne Treseder, Hallisey and Johnson, San Francisco, Cal., for Robert W. Kenney.

C. Judith Johnson, Camerlingo & Johnson, Burlingame, Cal., for TWT, Inc., Trade Wind Traders, Inc., TW Trading Intern., TWT Financial Group, Patricia K. Henry.

Neil Bloomfield and Renee Chernus, Law Offices of Neil Bloomfield, Fairfax, Cal., for Charlotte E. Noda.

John A. Koeppel, Joshua Goodman, Ropers, Majeski, Kohn, Wagner & Kane, San Francisco, Cal., for Joseph J. Garbarino, Mike F. Buschati, Herbert Goldberg, William Kent III, Erna F. Longfellow, Frank Mammini, Terry Mirri, Sarkis S. Sarkisian.

David F. Gross, Mark C. Dosker and Donald P. Margolis, Graham & James, San Francisco, Cal., for Federal Sav. and Loan Ins. Corp. ("FSLIC").

## AMENDED ORDER

LEGGE, District Judge.

Plaintiff Westfield Insurance Company filed this action seeking a declaration of its obligations under policies of insurance issued by it. Defendants TWT, Inc., Tradewind Traders, Inc., T.W. Trading International, TWT Financial Group (hereinafter collectively called "TWT") and Patricia Kay Henry, an officer of TWT, seek a defense and indemnity from plaintiff for certain suits filed against them, arising from the failure and receivership of Columbus Savings and Loan Association. Defendants have been sued by Federal Savings & Loan Insurance Corporation ("FSLIC") and others because of defendants' financial dealings with Columbus. The question is whether defendants' potential liability in those suits is covered by plaintiff's policies, either imposing upon plaintiff the obligation of indemnifying defendants for their liability, or at least obliging plaintiff to defend defendants in those suits.

Defendants have moved for summary judgment, seeking a judgment of coverage under plaintiff's policies. The court has reviewed the moving and opposing papers, the policies of insurance, the arguments of counsel, the record of the cases, and the applicable authorities. The court is of the opinion that the following matters can be decided as a matter of contract interpretation and law, with no genuine issues of material fact.

### I.

Plaintiff issued a comprehensive general liability insurance policy (the CGL policy) and an excess policy to TWT, Inc. There is no dispute that the TWT defendants are "named insureds" under the policies. There is no dispute that Patricia Kay Henry, as an officer of TWT, is also an "insured" under the policy definitions; so all defendants will be called "defendants" or "TWT."

The insuring agreements of the CGL policy provide coverage for liability for bodily injury and property damage. An expanded coverage endorsement to that policy also extends coverage for so-called personal injury and advertising injury liability. The relevant provisions of the CGL policy, under which defendants seek coverage, are the following:

*Bodily Injury Coverage*

The company [plaintiff] will pay on behalf of the insured all sums which the

insured shall become legally obligated to pay as damages because of ... bodily injury.... to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury....

'Bodily Injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period ...

'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

### Advertising and Personal Injury Endorsement

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury....

'Advertising Injury' means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan. This insurance does not apply ... to personal injury or advertising injury arising out of libel or slander or the publication or utterance of defamatory or disparaging material concerning any person or organization or goods, products or services, or in violation of an individual's right to privacy, made by or at the direction of the insured with knowledge of the falsity thereof.

The relevant provisions of the excess policy are as follows:

The company will indemnify the insured for ultimate net loss in excess of applicable underlying limit which the insured shall become legally obligated to pay as damages because of

(A) Personal Injury;

(B) Property Damage; or

(C) Advertising Offense

to which policy applies, caused by an occurrence anywhere in the world, ...

'Damages' includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

'Advertising Offense' means injury occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan (other than a patent);

'Personal Injury' means bodily injury, shock, mental anguish, sickness or disease; injury arising out of false arrest, ... humiliation; and, except with respect to injury occurring in the course of the named insured's advertising activities, injury arising out of the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right to privacy;

'Occurrence' means an accident, including continuous or repeated exposure to conditions which results in personal injury, property damage, or advertising offense neither expected nor intended from the standpoint of the insured;

## II.

Defendants assert that the policies cover the actions against them under the bodily injury and the advertising injury coverages.

### A.

■ Westfield's initial argument is that the acts alleged against defendants are not "occurrences" within the meaning of the policies, but are rather "intentional" acts as a matter of law. Therefore, Westfield

believes, there is no need to inquire further into the other specific coverage provisions of the policies. Westfield relies on the authority of wrongful discharge cases, which hold that firing an employee is an intentional act, not covered by an "occurrence"-type policy. *St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal. App.3d 1199, 208 Cal.Rptr. 5 (1984); *Giddings v. Industrial Indemnity Co.*, 112 Cal.App.3d 213, 169 Cal.Rptr. 278 (1980); *Hartford Fire Ins. Co. v. Karavan Enterprises*, 659 F.Supp. 1075 (N.D.Cal.1986). This court believes that those cases are distinguishable and do not control the coverage of the acts alleged against defendants in this case.

Some of the claims against defendants arise from acts that are not necessarily intentional. Some allegations against defendants involve negligence, not intentional wrongdoing. And, as Westfield is aware, TWT defended FSLIC's recent summary judgment motion on the ground that the TWT officers were at most guilty of negligent supervision, not fraud. Negligent supervision could constitute an "occurrence" under the policy language. Therefore, this court believes that defendants have made a sufficient showing to bring the claims against them within the "occurrence" language. *Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 226 Cal.Rptr. 435 (1986) (insured's burden to show that the claim falls within the basic coverage).

Westfield also relies on this court's previous grant of summary judgment against TWT officers based on the *D'Oench* doctrine. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). This court determined that for purposes of the *D'Oench* doctrine, the TWT officers were, in essence, strictly liable on the personal guarantees they had signed. That is not the potential liability asserted against defendants here for their alleged involvement with Columbus. In the guarantee motions, this court did not determine the nature of defendant's involvement in the other affairs of Columbus, nor did it need to do so.

Assuming that some of the claims against TWT are "occurrences" within the policy language, the parties then dispute whether any of the claims fall within the other insuring agreements.

**B.**

■ TWT argues that the bodily injury coverage applies to the cross-claim by Charlotte Noda against TWT for damages allegedly caused by TWT's negligence. TWT submits the declaration of its counsel, C. Judith Johnson, who states that she notified Westfield on March 22, 1988 that the anticipated cross-claim would include damages for emotional distress. Later, at a status conference in this group of cases, Ms. Johnson asked Ms. Noda's attorney whether Noda sought damages for emotional distress, and Johnson was told that Noda did seek such damages. Johnson so informed Westfield. Finally, Johnson propounded interrogatories and the answers reflected claims for emotional distress. These interrogatories were served on Westfield March 30, 1989.

Westfield does not dispute that emotional distress is within the definition of "bodily injury" under the policies; in fact, the excess policy language explicitly includes it. Under *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 419 P.2d 168, 54 Cal.Rptr. 104 (1966), the duty to defend a lawsuit is broader than the duty to indemnify. An insurer must defend a suit whenever it ascertains facts *within or without* the complaint that give rise to the potential of liability under the policy. This court therefore determines that Westfield does have an obligation to defend the Noda cross-complaint.

That duty to defend arose when Ms. Johnson informed Westfield that she had spoken with Noda's counsel, who had told her that he was asserting a claim for emotional distress. The cross-complaint itself was not specific; it merely stated a claim for negligence against all defendants. The underlying complaint by the FSLIC did not state a claim for emotional distress, nor could it. Therefore, it is only by knowing more facts about Noda's role and claims that Westfield would be apprised of the

potential for a bodily injury claim. Once Westfield was told that Noda's attorney had represented that he asserted an emotional distress claim, Westfield had knowledge of facts giving rise to potential coverage. Under *Gray v. Zurich*, it is not necessary that those facts appear in a complaint.

■ Plaintiff argues that because Noda's cross-complaint was later dismissed without prejudice, by agreement of the parties, it cannot give rise to a duty to defend. However, the evaluation of the duty to defend must occur at the outset of the claim. *Gray v. Zurich*. And the cross-complaint may be reasserted at any time. Therefore, this court does not believe that the dismissal of the cross-complaint eliminates the duty to defend.

### C.

■ TWT also argues that certain claims asserted by FSLIC in the underlying complaint are covered by plaintiff's policies. TWT asserts that interrogatory answers by FSLIC give rise to a potential slander of title claim which is covered by the "advertising injury" provisions of the policies.

TWT propounded the following interrogatory to FSLIC:

"Do you contend that TWT and/or Henry negligently misrepresented that TWT held title to 1.8 million dollars loaned by Columbus to TWT, when in fact Eric Noda held title to 1.3 million dollars of the 1.8 million dollars?" It also asked whether FSLIC contended that Columbus suffered loss of reputation or good will because of the misrepresentation. FSLIC answered that TWT executed several documents indicating that it was the recipient of the money. FSLIC believes that as a result, Columbus loaned money to TWT. TWT defaulted, and the default resulted in negative publicity for Columbus, forcing Columbus to raise its interest rates to attract deposits, to work harder to attract qualified personnel, and to increase its cash reserves.

However, the argument that this is a slander of title, for purposes of "advertising injury" coverage, is inaccurate. FSLIC does not claim that TWT falsely slandered its title to anything. And even if a "title"

were somehow at issue here, it was not Columbus' interest in any property that was slandered by the alleged misrepresentations. The tort of slander of title is meant to protect against frivolous title disputes that interfere with the salability of property. On the record as it stands, FSLIC has not and could not state a claim against defendants for slander of title. Defendants are not entitled to coverage or a defense on that theory.

### D.

■ TWT also seeks coverage of the claims against it by FSLIC based on the "advertising injury" coverage for unfair competition. TWT argues that because California courts have read the state's unfair competition statute broadly enough to redress any fraudulent business practice or consumer fraud, that language should be read as broadly in insurance policies. This court disagrees. Courts have retained the more restrictive common law meaning of unfair competition in the interpretation of insurance policies, even when the term in a state statute has been interpreted more expansively. *Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (N.Y.1981); *Pine Top Insurance v. Public Utility District*, 676 F.Supp. 212 (E.D.Wash.1987); *Seaboard v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 504 P.2d 1139 (1973). Here TWT was not in competition with FSLIC or Columbus, and FSLIC has not and could not state a claim for the tort of unfair competition on the present record. Therefore, there is no duty to defend based on the "unfair competition" policy coverage.

### III.

■ Defendants assert that because Westfield has a duty to defend the Noda cross-complaint, it also has a duty to defend the entire action, including the underlying complaint against them by FSLIC. Defendants cite *Gray v. Zurich Ins. Co.; Garcia v. Truck Ins. Exchange*, 36 Cal.3d 426, 436, 682 P.2d 1100, 204 Cal.Rptr. 435

(1984); and *Tibbs v. Great American Ins. Co.*, 755 F.2d 1370, 1374 (9th Cir.1985). However, none of those cases address the issue here, where there is a potentially covered claim in a cross-complaint, but not in the main action. All of those cases state the general propositions that the duty to defend is broader than the duty to indemnify, and that the duty extends to any actions where the facts in the complaint, or the facts otherwise known, show a potential for coverage. Here, because the underlying complaint by FSLIC does not give rise to any potentially covered claims, Westfield is responsible for defending only the Noda cross-complaint.

This court concludes that Westfield has a duty to defend TWT and Henry as to the Noda cross-complaint only, from the time it was told by Johnson that Noda's attorney intended to assert a claim for emotional distress. Westfield has no duty to cover or defend defendants for the claims asserted against them by FSLIC.

TWT's motion for summary judgment is therefore granted in part and denied in part.

IT IS SO ORDERED.