The **AETNA CASUALTY & SURETY COMPANY**, Plaintiff,

v.

**TRANS WORLD ASSURANCE COMPANY, et al.,**
Defendants.

No. C–90–1012 RFPENE.

United States District Court,
N.D. California.

July 12, 1990.

negligent misrepresentation claim, without indicating an intent to depart from *WOW I.*

Lawrence A. Baker, Haims, Johnson, MacGowan & McInerney, Oakland, Cal., for plaintiff.

Mark D. Hudak, Lori A. Lutzker, Carr, McClellan, Ingersoll, Thompson & Horn, Burlingame, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

## I. INTRODUCTION.

The parties come before the court on plaintiff Aetna Casualty & Surety Company's ("Aetna") motion for summary judgment or, in the alternative, partial summary judgment. This is an action for declaratory relief in which Aetna seeks a ruling from the court that it is not obligated to defend or indemnify defendant Trans World Assurance Company ("Trans World") for the costs of an action brought against Trans World by third parties.[1] Aetna believes that it is entitled to summary judgment on the grounds that the insurance policy it issued to Trans World ("the policy" or "the Aetna policy") does not cover the type of damages Trans World will incur as a result of the underlying action.

Aetna contends that it issued only a premises liability insurance policy to Trans World, including coverage only for tort claims arising out of the ownership or operation of Trans World's facility at San Mateo, California. Aetna therefore moves for summary judgment on several grounds. First, it argues that any damages sustained by Trans World as a result of the underlying action are not covered under the policy, because such damages would not meet the definitions of property damage, personal injury, bodily injury, or advertising injury covered by the policy. Second, Aetna argues that the underlying action does not constitute an "occurrence" as defined by the policy. Third, Aetna contends that there is no coverage for damages from the underlying action because such damages arise out of an alleged breach of contract rather than an accident. Finally, Aetna asserts that there is no coverage because damages from the underlying action do not arise out of the ownership or operation of Trans World's San Mateo premises.

Trans World opposes Aetna's motion for summary judgment. As an initial matter, it contends that summary judgment is premature in this case because the facts of the underlying action are still developing, meaning that the nature of the claims for which it seeks coverage may change. Second, Trans World argues that the com-

1. The underlying action against Trans World, *Adler, et al., v. Mutual Life Insurance Co., et al.,* No. C-1-89-078 (S.D.Ohio), includes claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 *et seq.,* ("RICO"), breach of contract, fraud, negligent misrepresentation, and estoppel. Multiple plaintiffs have sued Trans World, alleging that Trans World employee Donald Fletcher engaged

in a fraudulent tax shelter scheme whereby he induced plaintiffs to purchase Trans World insurance policies as tax shelters. Plaintiffs claim they were audited by the Internal Revenue Service and assessed penalties as a result of participation in the scheme. Plaintiffs in the underlying action, currently pending in federal district court in the Southern District of Ohio, are seeking class certification.

plaint in the underlying action alleges advertising injuries covered by the Aetna policy. Third, it argues that the underlying action—contrary to Aetna's argument—constitutes an occurrence under the policy. Fourth, Trans World argues that the policy does provide coverage for damages arising out of breach of contract. Finally, Trans World opposes Aetna's interpretation of the policy as limited to premises liability.

## II. BACKGROUND.

The underlying action for which Trans World is seeking defense and indemnification from Aetna involves a fraudulent tax shelter scheme allegedly perpetrated by Donald Fletcher, a former Trans World insurance agent. Fletcher, while under contract as an agent for Trans World,[2] conducted a series of tax seminars around the country. He convinced participants that they could reduce their tax liability to zero by investing half the value of their previous year's tax liability in a home business and the other half in life insurance.

Fletcher allegedly profited from the scheme solely by garnering commissions from the insurance policies purchased by the participants. The life insurance policies involved in the scheme were issued by Trans World and by one other company. Trans World states that it neither knew of nor authorized Fletcher's seminars or tax scheme. Declaration of Charles Royals at ¶ 10.

The participants in the seminars who followed Fletcher's advice were eventually assessed back taxes, penalties, and interest by the Internal Revenue Service. Some of the seminar participants have filed suit in the Southern District of Ohio, alleging, *inter alia*, violations of RICO, fraud, and misrepresentation. Trans World is a named defendant in this action. The plaintiffs in the underlying action are currently seeking class certification; they state that the number of plaintiffs exceeds 750. *Adler* complaint at ¶ 29. Only three plaintiffs are currently named in the complaint, however.

Aetna issued a Special Multi–Peril Insurance Policy No. 05 SM 800900 to Trans World. The policy was in effect from March 23, 1983 to March 23, 1986. There is no dispute that the policy was in effect during a portion of the time in which Fletcher was conducting the tax seminars. The parties dispute only whether the scope of coverage for this policy includes the type of damage Trans World may sustain as a result of Fletcher's actions and the underlying claim. The terms of the policy will be discussed in greater detail below in the context of discussing the parties' particular arguments.

## III. DISCUSSION.

### A. *Standard for Granting Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judgment where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A party opposing the summary judgment motion may not rest upon the allegations or denials in his or her pleadings. Rather, the non-moving party's responses must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

---

**2.** Trans World provides a copy of Fletcher's contract to illustrate that he was an independent contractor rather than a regular employee. Exhibit A to the Declaration of Charles Royals. The "General Agent's Contract" between Fletch-er and Trans World authorized him to solicit applications for and sell Trans World life insurance policies, and perform other tasks required to carry out that function.

**B.** *Prematurity of Summary Judgment Motion.*

■ As an initial matter, we must consider Trans World's argument that the facts in this declaratory relief action are not yet sufficiently developed to make summary judgment under Rule 56 appropriate. Trans World contends that, since the facts of the underlying *Adler* action are still unfolding, the extent and nature of damages for which it will be seeking indemnification under the Aetna policy are not yet fixed. In particular, Trans World argues that the number of plaintiffs in the class may increase and that new plaintiffs may claim emotional distress, bodily injury, and property loss injuries not claimed by current plaintiffs. Thus, Trans World argues that consideration of summary judgment in this case is premature.

In support of its argument, Trans World cites to *McWhirter Distributing Company v. Texaco, Inc.*, which, in interpreting Rule 56, held that summary judgment should not be granted " 'until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law.' " 668 F.2d 511, 519 (Temporary Emergency Court of Appeals, 1980), *quoting N.L.R.B. v. Smith Industries*, 403 F.2d 889, 893 (5th Cir.1968). Trans World claims that it is entitled under Fed.R.Civ.P. 56(f) [3] to denial of Aetna's motion because Trans World is not adequately able to present its opposition given the lack of fully developed facts.

Aetna contends that the granting of summary judgment in this action would not be premature, advancing several arguments. Aetna argues that Trans World is incorrect in its speculation that additional plaintiffs might come forward in the *Adler* case with claims for emotional distress or property damage covered by the insurance policy. Aetna argues that this is not possible, for two reasons. First, Aetna argues that such claims would be time-barred by Ohio's two-year statutes of limitations for emo-

tional distress and property damage claims. Ohio Revised Code § 2305.10. Second, Aetna argues that emotional distress or property damage claims advanced by new plaintiffs would be sufficiently different from the claims advanced by the current *Adler* plaintiffs that potential new plaintiffs would not be eligible as class members. Thus, the court could not be faced with a situation where the claims in the underlying *Adler* action differ significantly from those described in the *Adler* complaint currently presented to the court as evidence.

■ Aetna further contends that Trans World is merely speculating that other plaintiffs may appear in the *Adler* case with claims covered by the policy, and that mere speculation is no basis for denying Aetna's motion. Aetna cites to Ninth Circuit authority holding that the party opposing summary judgment must make a strong showing of why it is currently unable to adequately present its opposition. Mere speculation that further evidence may develop is inadequate to make such a showing. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir.1978).

Having reviewed the complaint in the underlying *Adler* action and the insurance policy under which Trans World seeks indemnification and defense from Aetna, we believe this controversy is ripe for consideration of summary judgment. We agree with Aetna that Trans World's objection regarding the possible appearance of additional plaintiffs with claims different than the current *Adler* plaintiffs amounts to speculation. *Neely* requires us to reject such speculation as grounds for refusing to consider summary judgment. The *Adler* complaint gives a full description of the claims which the Aetna policy is alleged to cover. Copies of the policy have been provided to the court. Thus, the court has the necessary information before it to allow resolution of this controversy by summary judgment. We wish to make absolutely clear for the record, however, that we rule

---

**3.** Fed.R.Civ.P. 56(f) provides in relevant part: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained...."

only on the facts as presented to us at this time. Were the *Adler* plaintiffs to successfully amend their complaint to state additional causes of action, the new causes of action would not be governed by this order.

C. *Whether the Underlying Complaint Alleges Damages Covered by the Policy.*

Aetna and Trans World dispute whether the underlying complaint in the *Adler* action contains claims for relief of such a nature that damages from those claims would be covered by the Aetna policy. Aetna argues that the *Adler* complaint will not inflict any damages upon Trans World that fall into any of the following categories covered by the policy: 1) property damage; 2) bodily injury; 3) advertising injury; or 4) personal injury.

■ Aetna also contends that Trans World has effectively admitted that the *Adler* complaint fails to allege any damages falling into categories one, two, or four. The court agrees that Trans World opposes only Aetna's argument that no advertising injuries as defined by the policy have been alleged by the *Adler* plaintiffs. Trans World's arguments regarding bodily injury, property damage, and personal injury go only to the question of whether additional plaintiffs might come forward at some future date alleging such injuries. Counsel for Trans World so stated at the oral argument of this motion. Therefore, it is undisputed that no damages falling into the categories of property damage, bodily injury, or personal injury as defined by the policy are alleged in the *Adler* complaint.

■ The court will now address the parties' dispute regarding whether advertising injuries as defined by the policy are alleged by the *Adler* complaint. The Aetna policy provides coverage for:

> ... all sums which the insured shall become legally obligated to pay as damages because of ... advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy ter-

ritory, and [Aetna] shall have the right and duty to defend any suit against the insured seeking damages on account of such injury.... Policy Broad Form Comprehensive Coverage General Liability Endorsement, p. 2.

The policy further defines advertising injury as follows:

> "Advertising injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title, or slogan.

Trans World's claim that it is entitled to defense and indemnification in the *Adler* case focuses on the "unfair competition" category of advertising injury. Trans World asserts that the term "unfair competition" must be read as broadly as possible in this instance, relying on the well-settled principle of California law that ambiguities in insurance contracts must be construed so as to protect the insured. *See, e.g., Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 269, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Contending that "unfair competition" as used in the policy is an ambiguous term, Trans World maintains that it should be read to include any unfair business practices connected to "advertising activities." Because, Trans World argues, the use of advertising "is inherent in the marketing activities described in the underlying complaints," the unfair business practices complained of by the *Adler* plaintiffs are comprehended within the policy definition of advertising injuries.

As support for this argument, Trans World proffers § 17200 of the California Business and Professions Code. The statutory definition of unfair competition in that provision encompasses unfair business practices generally:

> As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising....

The court should adopt this definition of unfair competition as that intended by the insurance policy, Trans World contends. Trans World believes that Fletcher's conduct in defrauding the *Adler* plaintiffs falls within this definition, meaning that the policy affords coverage for any damages arising out of the *Adler* complaint.

Aetna responds that the definition of unfair competition contained in Cal.Bus. & Prof.Code § 17200 cannot be read into the policy, for two reasons. First, Aetna contends it is inapplicable because the *Adler* action, venued in Ohio, does not and could not include a claim for violation of § 17200. Second, Aetna cites persuasive authority from this district suggesting that California courts do not read the statutory definition of unfair competition into insurance policies. Interpreting an identical "advertising injury" clause in an insurance policy, Judge Legge wrote:

> [Defendant] argues that because California courts have read the state's unfair competition statute broadly enough to redress any fraudulent business practice ... that language should be read as broadly in insurance policies. This court disagrees. Courts have retained the more restrictive common law meaning of unfair competition in the interpretation of insurance policies [requiring that the damage complained of be between competitors].... *Westfield Insurance Co. v. TWT, Inc.*, 723 F.Supp. 492, 496 (N.D. Cal.1989).

While we would find Judge Legge's reasoning persuasive were we to reach Aetna's second argument, we prefer to rely on Aetna's first argument concerning the relevance of § 17200. We find the California statutory definition of unfair competition to be irrelevant, since the *Adler* plaintiffs have not alleged a claim for unfair competition in Ohio, or in California. The policy terms provide coverage for damages sustained as the result of successful suits for specified types of "advertising injury." "Advertising injury" includes such torts as libel, slander, and unfair competition. Given that the *Adler* plaintiffs do not seek damages for any of these torts, including the tort of unfair competition, any damages recovered by the *Adler* plaintiffs will not constitute unfair competition damages under the policy, no matter what definition the court gives to this term. Therefore, we find that the policy affords no coverage for the types of damage complained of by the *Adler* plaintiffs. Aetna is obligated neither to indemnify nor to defend Trans World in the *Adler* litigation.

Because we find that the claims made by the *Adler* plaintiffs do not fall into any of the categories of damages covered by the policy, we need not reach the other arguments presented by the parties regarding whether Fletcher's acts constituted an occurrence under the policy, whether breach of contract damages are covered under the insurance policy, or whether policy coverage is limited to premises liability.

## IV.   CONCLUSION.

For the reasons set forth above, Aetna's motion for summary judgment is HEREBY GRANTED.

IT IS SO ORDERED.