NEW HAMPSHIRE INSURANCE
COMPANY, Plaintiff,

v.

FOXFIRE, INC., James G. Sullivan, and
Toyon Associates, Inc., Defendants.

FOXFIRE, INC. a California
Corporation, Plaintiff,

v.

NEW HAMPSHIRE INSURANCE COM-
PANY, a New Hampshire Corporation
and DOES 1–25, inclusive, Defendants.

Nos. C–91–2940–MHP, C–91–3464–MHP.

United States District Court,
N.D. California.

April 1, 1993.

490

Kathleen E. Hegen, Kevin G. Cronin, Boornazian, Jensen & Garthe, Oakland CA, for New Hampshire Ins. Co.

David S. Eisenmann, F. Raymond Marks, David S. Eisenmann Law Offices, Walnut Creek, CA, for Foxfire, Inc., James G. Sullivan and Toyon Associates, Inc.

## MEMORANDUM AND ORDER

PATEL, District Judge.

New Hampshire Insurance Company ("NHICO") filed civil action number C–91–2940 seeking a declaratory judgment that it has no duty to defend or indemnify its insured, Foxfire, Inc. ("Foxfire") in connection with an action ("underlying action") brought in Contra Costa County, California, Superior Court against Foxfire and its principal,

James G. Sullivan ("Sullivan") by Toyon Associates, Inc. ("Toyon").[1] Foxfire, in turn, filed civil action number C–91–3464 against NHICO.[2]

After consolidation, this court stayed the instant actions pending the California Supreme Court's decision in *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992). The consolidated actions were returned to the active calendar after a decision was rendered in *Bank of the West* on July 30, 1992.

These consolidated actions are now before the court on cross-motions for summary judgment. NHICO moves for a judicial declaration that it has no duty to defend or indemnify its insured. Foxfire moves for summary judgement on the first, second, and third claims for relief in its complaint: (1) breach of insurance contract; (2) breach of the covenant of good faith and fair dealing; and (3) breach of fiduciary duty. *See* Ex. 1., at 7–10.

Having considered the papers submitted and the arguments of the parties, the court enters the following Memorandum and Order.

BACKGROUND

NHICO issued a comprehensive general liability policy to Foxfire which became effective on December 19, 1989 ("The Policy"). *See* Ex. 1.A. Under the business liability coverage of the Policy, NHICO agreed to pay on behalf of the insured all sums for which the insured might become liable in damages for, among other things, advertising injury caused by unfair competition. Ex. 1.A, § II at 11 & 14. Foxfire alleges that NHICO's duty to defend arose when Foxfire was sued by Toyon in the underlying action.

I.   *The Underlying Action*

Sullivan developed a revenue enhancement consulting practice while working as a C.P.A. for KM Peat Marwick and later Coopers & Lybrand. His clientele included hospitals and other health care facilities. Toyon is a health care consulting and software design firm which does medical care cost and fiscal consulting, but not revenue enhancement work. In the summer of 1988 Sullivan entered into an employment agreement with Toyon. Ex. 1.B at 2. The agreement, detailed in a letter dated July 26, 1988, provided that Sullivan would bring his existing clients with him to Toyon and establish and manage a revenue enhancement services branch of Toyon exclusively for Toyon's clients. Ex. 1.B.i. Sullivan was to receive a salary, benefits and an annual bonus. *Id.* at 2.

In mid–1989 Sullivan decided to form his own revenue enhancement firm, Ex. 1.B at 4, and informed Toyon of this decision. The Toyon complaint alleges that discussions ensued between Sullivan and Toyon which allowed Sullivan to set up a separate business entity, Foxfire, for his revenue enhancement services. *Id.* Pursuant to these discussions, Foxfire and Toyon allegedly entered into an oral agreement whereby Foxfire was allowed to provide services to both Sullivan's and Toyon's clients and in return Foxfire agreed to lease space from Toyon for a three year term and pay for the use of Toyon office equipment. Ex. 1.B at 4–5. On December 22, 1989 Sullivan mailed, on Toyon letterhead, a letter ("Sullivan letter") to all Toyon clients announcing the formation of Foxfire. Ex. 1.D.

---

1.   Toyon filed the underlying action, Contra Costa County civil action number C–90–00636, on February 13, 1990. Toyon's complaint included claims for breach of fiduciary duty, breach of oral contract, fraud, intentional interference with contractual relations, interference with economic relations, conversion, money due, and accounting. *See* Ex. 1.B.* The complaint was later amended to include a claim for misappropriation of trade secret/customer list, temporary restraining order, preliminary injunction and permanent injunction. *See* Ex. 1.C.

\* Both NHICO and Foxfire have attached essentially the same exhibits to their motions for summary judgment. For ease of reference and consistency, all cites to exhibits will refer to those attached to NHICO's cross-motion.

2.   Foxfire's complaint against NHICO alleges breach of contract, bad faith breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, wrongful breach of fiduciary duty, wrongful concealment of duality of interests and impairment of ability to discharge fiduciary duty, and civil RICO injury. *See* Ex. 1.

In January 1990 a dispute arose regarding whether Sullivan and Toyon had actually entered into an oral agreement. Toyon alleges that Sullivan informed it "that [Foxfire] would not be providing any remuneration, payment or other consideration to Toyon for the business it received from Toyon." Ex. 1.B at 5. Toyon then filed the underlying action in state court. Ex. 1.B. Foxfire filed a cross-complaint for damages for wrongful eviction and for wrongful withholding of wages. Ex. 2.

## II. *Tender of Defense*

Foxfire tendered defense of the underlying action to NHICO on February 22, 1990. Ex. 1.E. NHICO denied coverage in a letter dated February 25, 1990. Ex. 1.F. The NHICO letter also requested a response from Foxfire regarding any disagreement with its denial. Foxfire apparently did not respond to this initial letter. On March 11, 1991 a follow up letter was sent to Foxfire. Ex. 4. On April 1, 1991, Foxfire responded and expressed disagreement with NHICO's position on coverage. At that time, Foxfire reiterated its demand that NHICO accept its tender of defense citing *Bank of the West v. Superior Court*, 226 Cal.App.3d 835 (1991), *superseded, Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); *Demonet Industries v. Transamerica Ins. Co.*, 227 Cal.App.3d 744 (1991), *vacated, Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); and *Keating v. National Union Fire Ins. Company*, 754 F.Supp. 1431 (C.D.Cal.1990). Ex. 1.G. On May 29, 1991 NHICO again rejected the tender of defense based on the California Supreme Court's grant of review in *Bank of the West*. Ex. 1.H.

The underlying action settled in July 1991. Foxfire wrote to NHICO on July 18, 1991 demanding reimbursement for attorneys' fees and costs incurred in defending that action. Ex. 1.i. Upon review of the settlement documents in the underlying action, Foxfire discovered that NHICO had undertaken the defense of Toyon against Foxfire's wrongful eviction claim pursuant to a general liability policy issued by NHICO to Toyon. Ex. 1 at 10.

NHICO filed its declaratory relief action with this court on September 10, 1991. NHICO now moves for summary judgment of the grounds that it has no duty to defend Foxfire. Foxfire filed its action against NHICO October 3, 1991. Foxfire now cross-moves for summary judgment on the grounds that NHICO's refusal to defend Foxfire was a breach of the covenant of good faith and fair dealing, breach of the Policy itself, and a breach of fiduciary duty. Resolution of the competing motions depends upon the language of the Policy and whether Foxfire's acts as alleged in the underlying action created a potential for liability giving rise to a duty to defend under the Policy.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the non-moving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

Cases involving "interpretation of insurance contracts raise questions of law and thus are particularly amendable to summary

judgment". *John Deere Ins. Co. v. Shamrock Industries, Inc.*, 696 F.Supp. 434, 438 (D.Minn.1988), *aff'd*, 929 F.2d 413 (8th Cir. 1991).

## DISCUSSION

### I. *Duty to Defend*

■ An insurer's duty to defend is broad. *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). It is measured by the reasonable expectation of the insured, and must be assessed at the outset of the case. *Fire Ins. Exchange v. Jiminez*, 184 Cal.App.3d 437, 441, 229 Cal.Rptr. 83 (1986). An insurer's "duty to defend must be analyzed and determined on the basis of any potential liability arising from facts available to it at the time of the tender of defense." *CNA Casualty*, 176 Cal.App.3d at 605, 222 Cal.Rptr. 276. Therefore the duty to defend arises whenever the allegations in the complaint fall within the risk covered by the policy. *Id.* at 612, n. 7, 222 Cal.Rptr. 276.

■ In a duty to defend case, the voice of the plaintiff in the underlying action controls. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 277, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Therefore, NHICO's duty to defend "must be analyzed and determined on the basis of any potential liability arising from facts available to [NHICO] from the [Toyon] complaint or other sources available to it at the time of the tender of defense." *CNA Casualty*, 176 Cal. App.3d at 605, 222 Cal.Rptr. 276; *see also Westfield Ins. Co. v. TWT, Inc.*, 723 F.Supp. 492, 495 (N.D.Cal.1989). Foxfire claims that the Toyon complaint alleges sufficient facts to create a potential for liability and that NHICO accordingly has a duty to defend under the Policy.

In determining whether NHICO has a duty to defend Foxfire, the court must inquire whether, at the time Foxfire tendered its defense to NHICO, there were sufficient facts alleged to create a potential of liability subject to coverage under the Policy. *See Westfield*, 723 F.Supp. at 495. Review of the language of the Policy itself is essential to this determination. The Policy defines an advertising injury as "injury arising out of offense committed during the policy period occurring in the course of the named insured's advertising activities if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright titles or slogan." Ex. 1.A, § II at 14. Thus, an "advertising injury" requires: (1) an advertising activity by the named insured; (2) allegations that fit into one of the named offenses; and (3) an injury that arises out of an offense committed in the course of the advertising activity.

### A. *Advertising Activity*

■ One problem with the Policy is that while it defines "advertising injury," it does not define "advertising". Courts disagree on what constitutes "advertising activity". While some courts construe the term as broadly as possible [3] others define it in very narrow terms.[4]

In *Bank of the West*, the California Supreme Court avoids defining the scope of the term "advertising" and notes that other courts disagree on the issue. 2 Cal.4th at 1276 n. 9, 10 Cal.Rptr.2d 538, 833 P.2d 545. The Court does observe, however, that the majority of published opinions define the term to mean "widespread promotional activities directed to the public at large." *Id.*

NHICO bases its argument against a duty to defend on the narrow view of advertising activity as public distribution of advertising material. NHICO contends that the Sullivan letter is not the type of publicity encompassed by the term "advertising activity" and is therefore not covered under the Policy. NHICO states that because the letter was sent on Toyon letterhead to existing clientele,

---

3. In *John Deere Ins. Co. v. Shamrock Industries, Inc.*, the court looked to Blacks Law Dictionary to define advertising activity as "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business...." 696 F.Supp. at 434 (citations omitted).

4. *See Fox Chemical Co., Inc. v. Great Am. Ins. Co.*, 264 N.W.2d 385, 386 (Minn.1978) (narrowly defining advertising activity as "public or widespread distribution of the alleged [advertising] material").

and not to the public at large, it was merely an announcement that Sullivan was forming a separate entity and not widespread promotional activity.

Foxfire, on the other hand, argues that the Sullivan letter, announcing the formation of Foxfire and stating that Foxfire would perform all revenue enhancement work, constituted an advertising activity.[5] The letter was signed by Sullivan as the president of Foxfire and announced that Foxfire "specialized" in revenue enhancement services including revenue maximization and business operation reviews. Foxfire also argues that the fact that the letter was written on Toyon letterhead, and sanctioned by Toyon, does not prevent it from being an advertising activity by Foxfire.

While the court is mindful that there is more than one reasonable interpretation of the meaning of "advertising," the cases giving the term a narrow definition have involved insurers seeking a declaration that no coverage existed under an advertising injury *exclusion*. *See American States Ins. Co. v. Canyon Creek*, 786 F.Supp. 821, 828 (N.D.Cal.1991). Therefore, "because the term [advertising] is used within the context of the insuring provisions and not within an exclusion, the term should be interpreted broadly, with any doubts as to coverage resolved in favor of the insured." *Id.*

In *John Deere* the district court found that an insured's letter to a single customer soliciting the sale of a new machine, together with a demonstration of the machine, was "advertising activity" under the insured's liability policy. 696 F.Supp. at 439–40. This court need not embrace the broad interpretation used in *John Deere*, for here the advertising was directed at *all* of Toyon's customers, not just one or a few. Advertising activity must be examined in the context of the overall universe of customers to whom a communication may be addressed.

Where the audience may be small, but nonetheless comprises all or a significant number of a competitor's client base, the advertising activity requirement is met. The holding might be different where the target audience are customers of a large organization that markets to the general public or a significant portion of it. But, where the business is one with a small customer base and that base, or a significant part of it, is the target audience, the reach is extensive enough to constitute advertising injury. To hold otherwise would effectively preclude small businesses such as Foxfire from ever invoking their rights to coverage for advertising injury liability under NHICO's and similarly worded policies.

Toyon's customers *were* the target audience of the Sullivan letter. Although there were only apparently some 22 to 31 customers, the letter was sent to all of them. Ex. 1.B at 5. A reasonable interpretation of the Policy therefore compels the conclusion that the Sullivan letter is a covered advertising activity.

### B. *Unfair Competition*

Foxfire's claim that it is entitled to a defense in the underlying action focuses on the "unfair competition" category of advertising injury. Foxfire alleges that the Sullivan letter was both an advertising activity and the basis for Toyon's claims of interference with economic advantage and misappropriation.[6] Foxfire asserts that these two claims constitute allegations by Toyon of common law unfair competition.

In *Bank of the West*, the California Supreme Court limited the meaning of "unfair competition" in advertising liability clauses such as that in the Policy to those acts included in the common law definition of unfair competition. 2 Cal.4th at 1262–1263, 10 Cal.Rptr.2d 538, 833 P.2d 545. The Court held that because damages are available for

---

5. In support of its argument Foxfire refers to *John Deere* which states that " 'advertise' encompasses any form of solicitation, presumably including solicitation of one person." 696 F.Supp. at 440. The *John Deere* court further held that an insurer could limit the scope of covered advertising activity by defining the term in the policy. *Id.*

6. In its complaint, Toyon states that Foxfire obtained information about Toyon's clients and used the information to generate profits for Foxfire. Ex. 1.B at 9.

common law unfair competition but not under sections 17200 and 17203 of the California Business and Professions Code, insurance policies allowing for advertising injury due to unfair competition could not possibly refer to claims under the statute. *Id.* at 1267–1268, 10 Cal.Rptr.2d 538, 833 P.2d 545. Thus, advertising liability must generally arise from activity that involves the act of "passing off" one's goods as those of another, or selling confusingly similar goods or services which lead to exploitation· of a competitor's reputation in the market. · *Id.* at 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545; *see also Chatton v. National Union Fire Ins. Co. of Pittsburgh, PA,* 10 Cal.App.4th 846, 863, 13 Cal. Rptr.2d 318 (1992) (stating that the term "unfair competition" is not ambiguous, and clearly means the common law tort of passing off rather than fraudulent practices against the public as defined in the statute).

NHICO contends that none of the elements of common law unfair competition have been satisfied. It argues that Sullivan was neither passing off his services as those of Toyon, nor passing off Toyon's services as his own. NHICO points out that the Sullivan letter discussed the *transfer* of Toyon's revenue enhancement clients to Foxfire. It also stresses that the clients dealt directly with Sullivan both when he was employed by Toyon and when he ventured out on his own, and that some of the clients serviced by Foxfire were clients of Sullivan prior to his ever being hired at Toyon. Further, NHICO asserts that there was no confusion about whether Foxfire or Toyon was providing the revenue enhancement services. Therefore, NHICO contends that there was no likelihood of confusion.

■ NHICO further argues that Toyon and Foxfire were not in competition with one another, and therefore no unfair competition could exist.[7] It points to Toyon's hiring of Sullivan as evidence that Toyon never had the ability to perform revenue enhancement services. It further stresses that Foxfire was formed as a separate business venture

with the approval of Toyon, and that the announcement of Foxfire's formation on Toyon letterhead was proof that the two companies did not intend to compete with one another.

Foxfire, on the other hand, asserts that the fifth cause of action (interference with economic relations) in Toyon's original complaint, and the eleventh cause of action (temporary restraining order, preliminary injunction, and permanent injunction) in the amended complaint give rise to a duty to defend. In the fifth cause of action Toyon states that "[Foxfire] further interfered with Plaintiff's economic relationship with its clients by representing to said clients that it was continuing to act on behalf of Toyon and/or was assigned the accounts of Toyon's clients by Toyon." Ex. 1.B at 9. Foxfire interprets this statement as an allegation by Toyon that Foxfire caused a likelihood of confusion among Toyon's clients and therefore "passed off" Foxfire's services as those of Toyon.

■ The insurer's duty to defend "is not measured by the technical. legal cause of action pleaded in the underlying third party complaint, but rather by the potential for liability under the policy's coverage as revealed by the facts alleged in the complaint or otherwise known to the insurer." *CNA Casualty,* 176 Cal.App.3d at 606, 222 Cal. Rptr. 276. Moreover restricting the defense obligations of an insurer to the precise language of pleadings in an underlying action would ignore the thrust of the .cases and create an anomaly for the insured. *Id.* at 607, 222 Cal.Rptr. 276. Therefore, in determining whether an insurer owes a duty to defend, greater attention should be given to the alleged facts of the action in which defense is sought by the insured than to the theory of recovery in the complaint. *Id.*

■ The court finds that the facts alleged by Toyon—specifically that Foxfire misrepresented to clients that it was acting on behalf of Toyon—give rise to a potential of liability for common law unfair competition. In its

---

7. NHICO's argument completely ignores the modern view that, although businesses are not competitive, relief will be granted in unfair competition claims where customers are deceived as to the source of the goods. *See Academy of Motion Pictures, Arts and Sciences v. Benson,* 15 Cal.2d 685, 692, 104 P.2d 650 (1940).

complaint, Toyon contends that, but for this misrepresentation, its economic relationships would not have been interfered with. Therefore, the Toyon complaint gives rise to a duty to defend under the Policy.

The Toyon complaint also alleged that Toyon was unable to continue its revenue enhancement services because "the defendants Sullivan and Foxfire [held] the sole copy of the customer list and data bases that allow[ed] for that business." Ex. C at 4. Although NHICO asserts that the companies were not competitors, and provides some evidence to that effect, the court must look to the facts alleged in the Toyon complaint. Toyon claimed that Foxfire's actions prevented Toyon from *continuing* revenue enhancement activities, suggesting that Toyon had the ability to do the work whether or not Sullivan was employed by Toyon. The Toyon complaint thereby alleged that Toyon suffered a form of competitive injury.

The Policy requires NHICO to defend Foxfire in any suit alleging facts which give rise to coverage under the Policy. The Policy states that NHICO "shall have the right and duty to defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false or fraudulent." Ex. 1.A at 12. Contrary to NHICO's arguments, the key is not whether Toyon's allegations were true, but rather, whether such allegations were made. The allegations in Toyon's complaint were such that upon receipt of the complaint, NHICO's attorneys had "knowledge of facts giving rise to potential coverage" under the Policy. *See West-field*, 723 F.Supp. at 496.

### C. *Advertising Injury Arising Out of Unfair Competition*

■ The Policy provides for advertising injury liability only if the injury arose out of an alleged offense—in this case unfair competition—which occurred in the course of advertising activity. *See* Ex. 1.A, § II at 14. Having found that the Toyon complaint included allegations of advertising activity and unfair competition, the court now inquires whether the injury alleged in the underlying complaint arose out of unfair competition which occurred in the course of advertising activity. *See Nat'l Union Fire Ins. Co. v. Siliconix, Inc.*, 729 F.Supp. 77, 79 (N.D.Cal. 1989) (holding that patent infringement injury did not occur in the course of advertising). In *Siliconix*, the court held that the alleged injury must be caused by the advertising activity, not merely bear some relation in time, place or circumstance. *Id.* at 79–80. However, *Siliconix* is distinguishable from the instant case because the alleged injury was patent infringement, which requires actual sale of the infringing product not merely advertising. Significantly, the *Siliconix* court recognized that advertising injury could encompass a variety of offenses which might occur during the course of advertising, including, but not limited to, unfair competition. *Id.* at 80.

The Toyon complaint alleged unfair competition in the form of interference with economic relations and misappropriation. Relying on *Siliconix*, NHICO contends that there is no causal connection between the Sullivan letter and the injury to Toyon because Toyon sanctioned the activity by agreeing to share its clients with Foxfire. NHICO also suggests that Toyon's agreement with Foxfire to provide services in addition to revenue enhancement undermines any claim that there was a causal connection. Finally, NHICO contends that Toyon's complaint raised merely a breach of oral contract claim that Sullivan refused to remit agreed upon profits to Toyon, and that therefore the Sullivan letter was not the source of injury. In brief, NHICO argues that it was the alleged breach of the oral contract and not the Sullivan letter which constituted the claimed injury in the underlying action. If NHICO's assertions are correct, there is no potential for liability under the Policy, and consequently, no duty to defend Foxfire in the underlying action.

Foxfire argues that the Sullivan letter was the alleged principal medium for carrying out the alleged interference with Toyon's economic disadvantage and alleged misappropriation of Toyon's customer list. Once again, it is the factual allegations in the Toyon complaint, not the style or generalized characteristics of its causes of action which control.

*See CNA Casualty,* 176 Cal.App.3d at 607, 222 Cal.Rptr. 276.

The Toyon complaint alleges more than a mere breach of an oral contract. In its claim for interference with economic relations, Toyon alleges that Foxfire misrepresented both its relationship with Toyon and the source of the revenue enhancement services Foxfire offered. The Toyon complaint further alleges "that as a result of said acts committed by defendants, defendants have interfered with plaintiff's economic relationship with its clients to the financial benefit of defendants and to the detriment and damage to plaintiff...." Ex. 1.B at 9. The basis for Toyon's claims is the Sullivan letter. Accordingly the unfair competition injury alleged by Toyon allegedly arose from an advertising activity (the Sullivan letter). The unfair competition injury in the underlying action is therefore one which occurred "in the course of the named insured's advertising activity," Ex. 1.A, § II at 14, and which creates a duty to defend under the Policy.

## II. *Duty to Indemnify*

■ An insurer's duty to indemnify is "determined, measured, and limited by the terms of the insurance contract and depends upon an ultimate adjudication of coverage." *CNA Casualty,* 176 Cal.App.3d at 605, n. 1, 222 Cal.Rptr. 276 (citations omitted). The Policy under which Foxfire seeks indemnification contains language which states that "[NHICO] will pay on behalf of [Foxfire] all sums which the insured shall become legally obligated to pay as damages ... because of ... advertising injury caused by an occurrence to which this insurance applies." Ex. 1.A, § II at 11.

The alleged facts which trigger NHICO's duty to indemnify are found in the fifth cause of action of the Toyon complaint.[8] In the fifth cause of action, Toyon alleges that an economic relationship existed between Toyon and its clients. Toyon asserts that the relationship included, but was not limited to, revenue enhancement services, and that Toy-

on provided those services on a regular basis. Ex. 1.B at 8. Toyon further claims that Foxfire interfered with these economic relations, thereby disrupting the present and future economic benefit that Toyon would have gained from its customers. *Id.* at 9.

The underlying action settled in July 1991. Although there will necessarily be a dispute regarding how much money Foxfire should receive from NHICO, the basic question of whether NHICO has a duty to indemnify Foxfire is decided here. Based upon the potential for liability raised in the underlying action, the court finds that NHICO has a duty to indemnify Foxfire.

## III. *Covenant of Good Faith and Fair Dealing and Fiduciary Duty*

Foxfire also moves for summary judgment on the second and third claims in its Complaint. Foxfire alleges that NHICO violated the implied covenant of good faith and fair dealing and breached the fiduciary duty it owed Foxfire when it undertook the defense of Toyon in the cross-complaint filed by Foxfire in the underlying action without revealing this purported conflict of interest to Foxfire. Moreover, Foxfire claims that NHICO took no action, such as immediately filing a declaratory judgment action or hiring separate coverage counsel, to alleviate this conflict.

■ California law does not recognize the existence of a fiduciary duty between an insurer and an insured. *See Hassard, Bonnington, Roger & Huber v. Home Ins.,* 740 F.Supp. 789, 790–92 (S.D.Cal.1990); *Henry v. Associated Indemnity,* 217 Cal.App.3d 1405, 1418–19, 266 Cal.Rptr. 578 (1990). Although there is implied in every insurance policy a duty of good faith and fair dealing, and while this duty is "fiduciary in nature," *Spindle v. Chubb/Pacific Indemnity,* 89 Cal.App.3d 706, 712, 152 Cal.Rptr. 776 (1979), it does not create a fiduciary relationship. *See Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1148–49, 271 Cal.Rptr. 246 *review denied* (1990) (noting that a fiduciary must put the

---

8. Foxfire inaccurately states that the eleventh cause of action, which is found in the amended complaint and seeks a temporary restraining order, also triggers the duty to indemnify. Because the eleventh cause of action calls for equitable relief and not damages, it cannot give rise to indemnification.

interests of its trust above its own, whereas an insurer may give its own interests consideration equal to that it gives the interests of its insured). Accordingly, as a matter of law, Foxfire may not maintain an action for breach of fiduciary duty and therefore the court dismisses the third cause of action for breach of fiduciary duty.

■■■■■ A duty of good faith and fair dealing is implied in all California contracts, especially in those involving insurance. *Hassard*, 740 F.Supp. at 791. There are two requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld, and (2) the reason for withholding benefits must have been unreasonable, in bad faith, or without proper cause. *Love*, 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246.

■■ The threshold requirement is met in this case, for as the court has explained at some length, NHICO's narrow reading of the Toyon complaint resulted in a breach of its duty to defend Foxfire. However, NHICO based its denial of coverage on its interpretation of California law as applied to the facts known at the time Foxfire tendered the defense; nothing in the record establishes that, as a matter of law, NHICO acted in bad faith. Foxfire argues that NHICO's bad faith denial of coverage is evidenced by their accepting the defense of Toyon on the cross-claim and their attendant failure to either disclose this conflict to Foxfire or to have separate counsel decide whether NHICO had an obligation under the policy to defend Foxfire. NHICO maintains that as often happens, two of its insureds were on the opposite sides of a lawsuit, but that the tenders by Toyon and Foxfire were assigned to different adjustors and different coverage counsel. Hegen Dec. ¶ 2. Since a genuine dispute over a material fact is extant, the matter cannot be resolved summarily. Accordingly, Foxfire's motion for summary judgment on its second claim for relief—that NHICO breached the implied covenant of good faith and fair dealing—is denied.

*CONCLUSION*

For the foregoing reasons, the court HEREBY ORDERS that:

(1) NHICO's motion for summary judgment is DENIED;

(2) Foxfire's motion for summary judgement is GRANTED as to the breach of insurance contract claim and DENIED as to the claims for breach of implied covenant of good faith and fair dealing and breach of fiduciary duty; and

(3) In view of the above, Foxfire's claim for breach of fiduciary duty is dismissed *sua sponte*.

IT IS SO ORDERED.