983 F.2d 1077
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OREGON MUTUAL INSURANCE COMPANY, INC., an Oregon
Corporation, Plaintiff-Appellant,
v.
INVESTMENT TAX MANAGEMENT, INC.; I.T.M. Insurance Services,
Inc.; Daniel Muhe; Christian A. Young; Michael Lutsch;
Burdett Streeter; Charles Lietze; Industrial Indemnity
Insurance Company, Defendants-Appellees.
 No. 89-56314.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1992.*
Decided Dec. 14, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Oregon Mutual Insurance Company ("Oregon Mutual") appeals the district court's judgment in favor of its policyholder Investment and Tax Management Insurance Services ("I.T.M.I.S.") in a duty to defend dispute. We reverse and remand.
 
 I. Factual and Procedural Background
 
 3
 I.T.M.I.S. held a "Business Owners Protectors Policy" (the "Policy") from Oregon Mutual which insured I.T.M.I.S. against liability arising out of personal injury and/or property damage, but excluded coverage for liability arising from professional services which I.T.M.I.S. might render or fail to render. In September 1986, several disgruntled investors named I.T.M.I.S. in a suit for fraud and deceit in connection with the sale of investment units and securities in real estate developments. See Dietz v. Syndico, Inc. et al., No. C 563049 (S.D.Cal., filed Nov. 26, 1986). The Dietz complaint (the "Complaint") alleged 24 separate causes of action ranging from negligence to accountant malpractice and fraud.[1]
 
 
 4
 Oregon Mutual sought a declaratory judgment that it had no duty to defend I.T.M.I.S. in the Dietz litigation. After its motion for summary judgment was denied, Oregon Mutual moved for reconsideration, and I.T.M.I.S. moved for summary judgment. Following a hearing, the district court affirmed its earlier finding that Oregon Mutual had a duty to defend and entered judgment in favor of I.T.M.I.S..[2]
 
 II. Standard of Review
 
 5
 A district court's grant of a motion for summary judgment is reviewed de novo. Aetna Casualty and Surety Co. v. Centennial Ins. Co., 838 F.2d 346, 350 (9th Cir.1988). We apply the same standard applied by the district court under Federal Rule of Civil Procedure 56(c): summary judgment is only proper when the pleadings and discovery, read in the light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. at 350.
 
 III. Discussion
 
 6
 This is a diversity case governed by California law. Aetna Casualty, 838 F.2d at 350. In order to determine whether Oregon Mutual had a duty to defend, we must determine whether any of the potential harms alleged in the complaint coincide with any of the harms covered by the Oregon Mutual Policy. If the complaint alleges any facts which might have led to liability under the Policy, Oregon Mutual had a duty to defend. CNA Casualty of Cal. v. Seaboard Surety Co., 176 Cal.App.3d 598, 605 (1986). The veracity of the allegations has no bearing on the determination of the duty to defend.[3]
 
 
 7
 Oregon Mutual contends that all of the allegations in the complaint involve the rendering of or failure to render professional services. Because the Policy explicitly excludes coverage for professional services, Oregon Mutual had no duty to defend. We agree.
 
 
 8
 The professional services liability exclusion provision states that the Policy does not cover damages caused by the "rendering of or failure to render any professional service." Under California law, where a policy contains a professional services exclusion and the insured is named in a complaint only alleging damages arising from the rendering of professional services, there is no duty to defend. Hollingsworth v. Commercial Union Ins., 208 Cal.App.3d 800 (1989) (insurance company not required to defend retail cosmetics merchant for a claim arising out of ear piercing where merchant held a general business liability policy with professional services exclusion).
 
 
 9
 Our sole inquiry, therefore, is whether the complaint may be read to allege anything other than the performance of professional services. The general scope of the complaint's allegations is evident from the paragraph which defines I.T.M.I.S.' alleged involvement in the actions underlying the suit. This paragraph describes only the giving of advice, counseling, guidance, professional services and investment planning. These are clearly professional services. See Bank of California, N.A. v. Opie, 663 F.2d 977 (9th Cir.1981), citing with approval Marx v. Hartford Accident and Indemnity Co., 157 N.W.2d 870, 871-72 (Neb.1968) (a professional service is one arising out of an occupation involving specialized skill which is "predominantly mental or intellectual").
 
 
 10
 The district court appears to have based its finding that Oregon Mutual had a duty to defend on its reading of one of the causes of action for negligence.[3] The thirteenth cause of action contains language alleging that the defendants were in "possession" of the plaintiffs' property apart from the business activities referred to in the complaint. Taken in isolation, these few sentences could be read to allege behavior which would not constitute professional services.
 
 
 11
 The same cause of action, however, also alleges that the defendants failed to provide correct advice. Viewed in the context of the entire complaint, including the paragraphs which describe the action as one for investment fraud, and which describe I.T.M.I.S.' involvement as involving the rendering of advice, it becomes clear that the thirteenth cause of action only alleges damages arising from the rendering of professional services. See Allstate v. Interbank Financial Serv., 215 Cal.App.3d 827 (1989) (complaint which alleged that insured "failed to properly manage and care for the plaintiffs' personal property" and "negligently and carelessly damaged" the property not enough to invoke the duty to defend, as the clear basis for the complaint was the rendering of "poor professional advice").
 
 
 12
 An insurer is not obligated to defend where the basis for liability "rests entirely on speculation and conjecture" and is too "tenuous and farfetched." Giddings v. Industrial Indem. Co., 112 Cal.App.3d at 213, 219 (1989). We find that the complaint failed to make any allegations relating to I.T.M.I.S. which could potentially have led to damages covered by the Oregon Mutual Policy, and as such Oregon Mutual had no duty to defend. This case is Reversed and Remanded to the district court with instructions to enter summary judgment in favor of Oregon Mutual.
 
 REVERSED AND REMANDED
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts for this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Dietz plaintiffs filed both a First Amended Complaint and a Third Amended Complaint. The district court reviewed both but, due to a procedural defect regarding the Third Amended Complaint, restricted its ruling to the First Amended Complaint. This analysis will do likewise
 
 
 [2]
 I.T.M.I.S. failed to submit an appellee brief
 
 
 [3]
 The Policy contains an express provision requiring Oregon Mutual to defend I.T.M.I.S. in any suit seeking damages payable under the policy, "even though the allegations of the suit may be groundless, false, or fraudulent." This provision requires Oregon Mutual to defend I.T.M.I.S. even if it has knowledge that the allegations are groundless; this provision would not, however, create a duty to defend for claims which allege damages not potentially covered by the policy. Aetna 838 F.2d 350
 
 
 [3]
 Although the district court stated very clearly in the April 3, 1989, hearing that its final judgment considered only the First Amended Complaint, when the district court first considered the summary judgment issue on April 4, 1988, it appears to have relied upon the Third Amended Complaint. However, although there are differences between the wording of the Negligence action in the First Amended Complaint (13th Cause of Action) and Third Amended Complaint (5th Cause of Action), the analysis remains the same